# CHARLESTON.

BEN LOMOND Co. *v.* MCNABB *et al.*

(No. 6681)

Submitted April 15, 1930.   Decided May 6, 1930.
(Rehearing Denied July 16, 1930.)

*Livezey, Hogsett & McNeer* and *John T. Delaney,* for appellants.

*Dillon, Mahan & Holt* and *Marcum & Marcum,* for appellees.

LITZ, JUDGE:

This suit involves a controversy between the widow and heirs at law of Alex McNabb, deceased, as to whether the decedent was, at the time of his death, the owner of certain real estate in the city of Huntington, W. Va., or held legal title thereto as security for a debt.

By deed dated February 6, 1926, G. D. Miller and wife conveyed, with covenants of general warranty of title, the real estate in question to said Alex McNabb.  Alex McNabb and Florence McNabb, his wife, as lessor, and G. D. Miller, as lessee, entered into a contemporaneous written agreement, whereby the lessors demised the property to the lessee for a period of five years at a yearly rental of $10,000, payable semi-annually, the lessee also agreeing to pay the taxes on the land and the cost of insurance covering the buildings thereon.  The pertinent parts of contract follow: ''Whereas the said G. D. Miller and Chloe Miller, his wife, have *sold* and by deed of even date here-

with conveyed unto Alex McNabb the premises hereby demised, and whereas by the terms of such *sale* the said G. D. Miller was to have a lease upon the premises so *sold* for a period of five years, and for a like period to have the sole and exclusive right, power and privilege or option of purchasing the premises *so sold* and conveyed by the deed aforesaid on the day of expiration of said lease. * * * Now, therefore * * * if at the expiration of the term of this lease, * * * the lessee desires to purchase the premises hereby demised, he may do so upon the payment to the lessors of the sum of $100,000.00. In the event such sale is consummated during the term hereof the rent herein provided for shall be pro rated between the lessors and the lessee as of the date thereof. In the event of the sale of the whole premises hereby demised from the lessors to the lessee under the provisions hereof, the lessors shall convey the same to the lessee by an apt and proper deed with covenants of general warranty, freedom from encumbrances and right to convey.'' On April 15, 1927, G. D. Miller and wife transferred and assigned to Ben Lomond Company, a corporation, all their right, title, and interest in and to said contract.

In September, 1927, Alex McNabb died intestate without issue, survived by his widow, Florence McNabb, and the following heirs at law, to-wit: S. E. Love, George Love, Sarah Caple, Margaret Gulley, Frank Love, John Love, Alex Love, Katherine Moore, and William Love. This suit was instituted January 18, 1928, by Ben Lomond Company against the widow, Florence McNabb (in her own right and as administratrix of the estate), and the said heirs at law. The bill alleges that the deed from G. D. Miller and wife to Alex McNabb was intended as a mortgage to secure a loan of $100,000 by McNabb to Miller; that after the death of McNabb plaintiff offered to ''repurchase'' the said real estate, if the widow and heirs at law would agree among themselves as to who should receive the purchase money, but that they did not agree because the widow contended the deed should be treated as a mortgage to secure the loan of $100,000 by Alex McNabb to Miller, which should be paid to her as sole distributee of the estate, while the heirs insisted that it was an absolute conveyance subject only to the right of the grantor to repurchase the real estate under the

terms of the contemporaneous contract. The bill prays that the defendants be required to "reconvey" said real estate to the plaintiff upon its paying to the person or persons entitled thereto the amount owing the estate by reason of the transaction between Alex McNabb and G. D. Miller, involving the execution of the deed and contract; and that, pending a hearing of the matter, the plaintiff be permitted to pay the same into court. The answer of Florence McNabb avers that the deed was intended merely as a security for a loan of $100,000 from Alex McNabb to G. D. Miller which assumed the form of an absolute conveyance "so that said loan would not appear to be usurious and to better secure the payment of the principal and interest"; and prays that "the plaintiff be permitted to redeem said land by the payment of $100,000.00 and the interest accrued thereon," that the deed from G. D. Miller and wife to Alex McNabb be treated as a mortgage to secure said loan, and that upon such payment by plaintiff, "the defendants" be required to convey him said real estate. The joint and several answer of the heirs at law denies that the deed was intended as a mortgage; avers that the conveyance and contemporaneous contract constituted a conditional sale of the land to Alex McNabb; and admits the right of the plaintiff, as the assignee of G. D. Miller, to repurchase the land in accordance with the terms of the contract. Upon the taking and filing of depositions in behalf of the widow and heirs at law, the circuit court entered a final decree adjudging that the deed was intended as a mortgage to secure a loan of $100,000 by Alex McNabb to G. D. Miller, requiring the defendants, upon repayment by plaintiff of the $100,000 and accrued interest to the widow, as administratrix of the estate, to convey said lands to the plaintiff, and decreeing that she is entitled to said fund as sole distributee of the estate.

Having appealed from said decree, the heirs at law contend, first, that the parol evidence, as well as the deed and contract, show that the transaction between Alex McNabb and G. D. Miller, involving the execution of these instruments, constituted a conditional sale, and, second, that the widow, Florence McNabb, being a party to the transaction (by signing the contract), and claiming under Alex McNabb, will not be permitted

in a court of equity to deny the legal import of the deed and contract by attempting to show that they were intended as a device to evade the usury and tax laws.

The parol evidence adduced by the widow tends to prove that G. D. Miller applied to Alex McNabb for a loan of $100,-000 to be secured by a lien on said real estate; that McNabb was unwilling to part with his money at less than 10 per cent interest net; that, realizing he could legally demand only 6 per cent. interest for the loan and would be required to pay a large tax on the note evidencing the same, he required Miller to execute to him an absolute conveyance of the real estate subject to the right of Miller to repurchase the property under the terms of the contemporaneous written contract, in order to avoid the usury and taxation statutes and to acquire an indefeasible title in the property upon failure of Miller to exercise his right of repurchase under the terms of the contract, without delay and expenses incident to sale under a mortgage or deed of trust, and that, at the time of the execution of the deed and contract, McNabb paid to Miller $100,000.

Will a court of equity lend its aid to the widow by giving legal effect to this evidence? ''The grounds on which courts of equity admit oral evidence, to show that a deed absolute in form is in fact a mortgage, are *purely equitable,* and *relief is refused whenever the equitable consideration is wanting.* Therefore when a creditor has made an absolute conveyance of his land to one creditor for the purpose of defrauding his other creditors, he is in no condition to ask a court of equity to interfere actively in his behalf to help him get his land back again, and thus secure to him the fruits of his fraudulent devices. One who comes for relief into a court whose proceedings are intended to reach the conscience of the parties must first have that standard applied to his own conduct in the transactions out of which his grievance arises. If that condemns himself, he cannot insist upon applying it to the other party.'' Jones on Mortgages, § 341. ''If a contract has been entered into through fraud, or *to accomplish any fraudulent purpose,* a court of equity will not, at the suit of one of the fraudulent parties,—a particeps doli,—while the agreement is still executory, either compel its execution or decree its can-

cellation, nor after it has been executed, set it aside, and thus restore the plaintiff to the property or other interests which he had fraudulently transferred. Equity will leave such parties in exactly the position in which they have placed themselves, refusing all affirmative aid to either of the fraudulent participants." Pom. Eq. Juris, § 401. In *Raleigh County Bank* v. *Bank of Wyoming,* 100 W. Va. 342, 130 S. E. 476, 477, the evidence showed that the defendant had induced the plaintiff to accept the note of a customer of the former in exchange for an equal amount in notes of customers of the latter, each party agreeing to save the other harmless in the transaction; and that the arrangement between the two banks was made in order to accommodate the customer of the defendant who had borrowed to the limit from it. Refusing to aid the plaintiff in its effort to enforce the obligation assumed by the defendant, this court in its opinion written by Judge Lively, said : "Defendant bank could not loan the money to [its customer] the coal company, because it would violate that provision of the state banking law which prohibits loans to any person, corporation, or firm of more than 20 per cent. of capital stock, surplus, and undivided profits. Chapter 54, § 79a (1), Code. This was communicated to plaintiff bank. * * * A scheme was [thus] entered into between the parties by which defendant bank could conceal a violation of law and escape its penalty. This scheme was executed. The exchange of securities was made. Whether the securities were mutually loaned with right to cancel the contract and have a return of them when either party so desired does not change the purpose for which the scheme was to, and did, effectuate. Such being the case, can plaintiff be heard to complain of a breach of that scheme in a court of equity ? It is well settled that a court will not aid either party to enforce an illegal transaction, but will leave them where it finds them. The reason underlying the principle of law is that the public interest demands that such illegal transactions be discouraged and prevented." This rule applies not only to the original parties to the transaction, but also to all persons claiming under them who are not protected by some intervening equitable rights. *Poling* v. *Williams,* 55 W. Va. 69, 46 S. E. 704.

The deed and contract on their face constitute a conditional

sale. *Sadler* v. *Taylor*, 49 W. Va. 104, 38 S. E. 583; *Fridley* v. *Somerville*, 60 W. Va. 272, 54 S. E. 592. Parol evidence is inadmissible in an action at law to prove that they were intended as a mortgage, *Billingsley* v. *Stutler*, 52 W. Va. 92, 43 S. E. 96; and, as equity admits parol evidence in such case not for the purpose of varying or contradicting the instruments but to establish an independent equity founded upon the intent of the parties (*Shields* v. *Simonton*, 65 W. Va. 179, 63 S. E. 972), which does not exist in this case, the deed and contract will be given their legal import as evidencing a conditional sale of the said real estate. The decree of the circuit court will therefore be reversed in so far as it adjudges that the money to be paid by the plaintiff in consideration of the conveyance to it by the defendants of the lands in question is personal property of the estate, to which the widow is entitled as sole distributee; and in all other respects affirmed.

*Reversed in part; affirmed in part.*