305 S.E.2d 332

**CLENDENIN LUMBER AND SUPPLY CO., INC., a Corp.**

v.

**Robert L. CARPENTER.**

**No. 15701.**

Supreme Court of Appeals of West Virginia.

July 8, 1983.

Charles E. Hurt, Charleston, for appellee.

Robert Lamont, West Virginia Legal Services Plan, Charleston, for appellant.

McHUGH, Justice:

This action is before this Court upon the appeal of Robert L. Carpenter, appellant and defendant below, (hereinafter "Carpenter"), from an order entered on March 22, 1982, by the Circuit Court of Roane County wherein Carpenter was ordered to pay Clendenin Lumber and Supply Company, Inc., appellee and plaintiff below, (hereinafter "Clendenin"), the sum of $789.97 pursuant to various credit transactions with Clendenin. This Court has before it the petition for appeal, all matters of record and the briefs and oral argument of counsel.

Clendenin is a West Virginia corporation engaged in the business of retail and wholesale marketing of lumber and hardware products. In regard to its employees, it maintains a policy of extending credit to them when they desire to purchase goods from Clendenin.

Carpenter was an employee of Clendenin and as such, was permitted, along with the other employees, to charge items that he purchased from Clendenin. Carpenter took advantage of this policy and on three separate occasions charged various items to his account. On September 30, 1977, Carpenter charged a net total of $112.04. On December 24, 1977, he charged goods totalling $715.71 and finally, on April 13, 1979, he charged goods worth $119.19. The top right corner of each invoice contained the following language: "Terms: Net 30 Days. After 30 days there will be a Finance Charge of 1½% per month which is an

annual percentage rate of 18%." On December 1, 1978, the 30 day period was changed to 90 days.

Between October 6, 1977, and April 13, 1978, Carpenter paid a total of $185.00 on his account. No other payments were made on his account until January of 1979, when the payments that were made resulted from an agreement between Carpenter and Clendenin which read: "I, Robert Carpenter (signature) do give my authorization to the payroll department of Clendenin Lumber and Supply to deduct 30.00 [dollars] per pay from my payroll to be paid on my account." The agreement was dated January 2, 1979, and was written on Clendenin's letterhead stationery. However, the agreement was not signed by a representative of Clendenin, nor was it notarized. Carpenter was paid every two weeks and for eight consecutive pay periods $30.00 was taken from his paycheck and credited to his outstanding credit balance.

On April 16, 1979, Carpenter ceased to be employed by Clendenin. The last pay deduction occurred on April 28, 1979, and as of October 27, 1979, the outstanding balance on his account with Clendenin was $689.88.

Clendenin sought to collect the outstanding amount of Carpenter's account plus interest and costs. Carpenter denied that he owed that amount and asserted counterclaims wherein he averred that the agreement between him and Clendenin was an assignment of earnings as contemplated by W. Va. Code, 46A–2–116 [1974], thereby violating, in form, W. Va. Code, 21–5–3 [1979]. In addition, he asserted that the sales transactions between the parties was part of an "open end credit plan" which violated the disclosure requirements of the Truth in Lending Act, as amended, 15 U.S.C. §§ 1601 et seq. and Regulation Z, 12 C.F.R. §§ 226.1 et seq.

Carpenter moved the trial court for partial summary judgment. The trial court, by order entered on May 11, 1981, denied the motion and ruled as a matter of law and fact that there had been no assignment of earnings and further ruled that the credit extended to Carpenter by Clendenin was not an "open end credit plan." [1]

A trial was held on the exclusive issue of the amount Carpenter owed to Clendenin, and in a final order the trial court ordered him to pay Clendenin the outstanding balance on his account including interest and court costs which totaled $789.97.

Carpenter assigns the following errors: (1) the trial court erred when it ruled as a matter of law and fact that the January 2, 1979 agreement between Carpenter and Clendenin was not an assignment of earnings under the West Virginia Consumer Credit and Protection Act, as amended, W. Va. Code, 46A–1–101 et seq., and thus, did not violate W. Va. Code, 21–5–3 [1979], and (2) the trial court erred when it ruled as a matter of law and fact that the sales

---

1. Prior to the trial the circuit judge in this action denied the motion of Carpenter for partial summary judgment and did not enter partial summary judgment in favor of Clendenin on Carpenter's counterclaims. The trial judge considered matters outside the pleadings, such as exhibits, affidavits and the deposition of Kathryn Payne, the credit manager of Clendenin, in ruling in favor of Clendenin. The trial judge stated in an order entered October 8, 1981:

> 1. The Court previously and finally determined, by its order entered May 11, 1981, denying the Defendant's motion for partial summary judgment, that no assignment and no open-ended credit plan existed as a matter of fact and law, and that these claims and defenses of the Defendant are no longer at issue in the case and no evidence will be received thereon in the proceeding;

> 2. There still remains a genuine issue as to the amount, if any, which the plaintiff may be entitled to recover from the Defendant;
> 3. The Plaintiff's motion for summary judgment is denied.

Although the trial judge denied a motion of the plaintiff for summary judgment, that denial was premised only on the issue as to the amount owed by Carpenter to Clendenin. We believe, therefore, it is appropriate for purposes of review to consider this action on the remaining issues under the same standards as if the trial judge had entered partial summary judgment in favor of Clendenin. See generally Hirrill v. Merriweather, 629 F.2d 490 (8th Cir.1980); Bernitsky v. United States, 620 F.2d 948 (3d Cir.), cert. denied, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980); Tuley v. Heyd, 482 F.2d 590 (5th Cir.1973); Donofrio v. Camp, 470 F.2d 428 (D.C.Cir.1972).

transactions between the parties were not part of an "open end credit plan" thereby excluding them from the disclosure requirements of the Truth in Lending Act, *as amended,* 15 U.S.C. §§ 1601 *et seq.* and Regulation Z, 12 C.F.R. §§ 226.1 *et seq.*

## I

The issue relating to the assignment of earnings involves the *interpretation of the* West Virginia Consumer Credit and Protection Act, Chapter 46A of the West Virginia Code, and the Wage Payment and Collection Act, *W. Va. Code,* 21–5–1 *et seq.*

*W. Va. Code,* 46A–2–116(2)(b) [1974], provides as follows:

"Assignment of earnings" includes all forms of assignments, deductions, transfers, or sales of earnings *to another,* either as payment or as security, and whether stated to be revocable or nonrevocable, and includes any deductions authorized under the provisions of section three, article five, chapter twenty-one of this Code, except deductions for union or club dues, pension plans, payroll savings plans, charities, stock purchase plans and hospitalization and medical insurance. (emphasis added).[2]

In addition, *W. Va. Code,* 21–5–3 [1979], provides, in pertinent part:

No assignment of or order for future wages shall be valid for a period exceeding one year from the date of such assignment or order. Such assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and such order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided further, that no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon: Provided further, that nothing herein contained shall be construed as affecting the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees. . . . [3]

"Deductions" is defined in *W. Va. Code,* 21–5–1(g) [1981] as "amounts required by to be withheld, and amounts authorized for union or club dues, pension plans, payroll savings plans, credit unions, charities and hospitalization and medical insurance."

Carpenter asserts that the January 2, 1979, agreement between Clendenin and him was an assignment of earnings as de-

**2.** In its entirety, *W. Va. Code,* 46A–2–116 [1974], provides:

(1) The maximum part of the aggregate disposable earnings of an individual for any workweek which may be subjected to any one or more assignments of earnings for the payment of a debt or debts arising from one or more consumer credit sales or one or more consumer loans, or one or more sales as defined in section one ·hundred two, article six of this chapter, may not exceed twenty-five percent of *his* disposable earnings for that week.

(2) As used in this section:

(a) "Disposable earnings" means that part of the earnings of an individual remaining after the deduction from those earnings of amounts required by law to be withheld; and

(b) "Assignment of earnings" includes all forms of assignments, deductions, transfers, or sales of earnings to another, either as payment or as security, and whether stated to be revocable or nonrevocable, and includes any deductions authorized under the provisions of section three, article five, chapter twenty-one of this Code, except deductions for union or club dues, pension plans, payroll savings plans, charities, stock purchase plans and hospitalization and medical insurance.

(3) Any assignment of earnings and any deduction under said section three, article five, chapter twenty-one of this Code shall be revocable by the employee at will at any time, notwithstanding any provision to the contrary.

(4) The priority of multiple assignments of earnings shall be according to the date and time of each such assignment.

**3.** It should be noted that the statutes in question use assignment of "earnings" and "wages" to represent the same transaction. However, in view of the fact that some of the most recent references to this type of transaction use the term assignment of "earnings," we shall do the same.

fined by *W.Va.Code*, 46A-2-116(2)(b) [1974], and as such, violated the form requirements of a valid assignment of earnings as set forth in *W.Va.Code*, 21-5-3 [1979]. Clendenin contends, on the other hand, that the January 2, 1979 agreement between the parties did not meet the definition of *W.Va.Code*, 46A-2-116(2)(b) [1974], because Clendenin, being Carpenter's employer, did not transfer the earnings "to another" but unto itself. Carpenter further contends that the clause contained in *W.Va.Code*, 21-5-3 [1979], "that nothing herein contained shall be construed as affecting the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees" does not exempt the agreement. He argues that the definition of "deductions," as contained in *W.Va.Code*, 21-5-1(g) [1981], only includes those deductions that are required by law or specifically enumerated in the statutes.

Inasmuch as *W.Va.Code*, 46A-2-116 [1974], and *W.Va.Code*, 21-5-3 [1979], relate to assignment of earnings, they are to be construed together to determine whether an employer is included in the words "to another." As this Court stated in *Farley v. Zapata Coal Co.*, 167 W.Va. 630, 281 S.E.2d 238 (1981):

> It is well established in West Virginia that when two statutes relate to the same general subject and the two stat-

utes are not in conflict, they are to be read *in pari materia*. *Tug Valley Recovery Center, Inc. v. Mingo County Commission*, 164 W.Va. 94, 261 S.E.2d 165 (1979); *State ex rel. Miller v. Locke*, 162 W.Va. 946, 253 S.E.2d 540 (1979); *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321 (1978).

167 W.Va. at 636–637, 281 S.E.2d at 243.

In 1974, the West Virginia Legislature passed a comprehensive consumer protection bill known as the West Virginia Consumer Credit and Protection Act, *W.Va. Code*, 46A-1-101 *et seq.*, which sought to modernize and clarify the law regarding consumer sales and credit transactions. Specifically, article 2 regulates, *inter alia*, the practice of creditors regarding credit and debt collection practices in consumer credit transactions. Section 116 of article 2 restricts the extent to which the future earnings of a debtor may be assigned in satisfaction of a debt arising out of such credit transactions. *W.Va.Code*, 46A-2-116 [1974]. *See generally* Cardi, *The West Virginia Consumer Credit and Protection Act*, 77 W.Va.L.Rev. 401 (1975); Note, *Consumer Law—the Supervised Loan in West Virginia*, 80 W.Va.L.Rev. 256 (1978).[4]

Passing on the broad purpose of the Act, we stated in *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), that the West Virginia

---

**4.** In its present form the West Virginia Consumer Credit and Protection Act is a unique compilation of consumer protection concepts. It is a hybrid of the Uniform Consumer Credit Code and the National Consumer Act and some sections from then-existing West Virginia law. *See* Cardi, *supra* at 414. The 1968 and 1974 versions of The Uniform Consumer Credit Code include provisions which limit the assignment of earnings in a consumer credit transaction and although these sections are more restrictive than *W.Va.Code*, 46A-2-116 [1974], the official comments that follow them embody the purpose of limiting assignment of earnings in credit transactions. The official comments state as follows:

> This Act recognizes the potential for hardship for a consumer and his dependents which may result from a disruption of the steady flow of family income. Just as Section 5.104 prevents a creditor from attaching unpaid earnings of a consumer before he obtains judgment, this provision precludes a

creditor from reaching the consumer's earnings pursuant to an irrevocable wage assignment obtained from the consumer. The purpose of both sections is to afford the consumer an opportunity to have his debt determined by a court before his unpaid earnings are taken against his will by a creditor. This provision prohibits a creditor from taking either an assignment of earnings as payment or as security for payment for a debt or a sale of earnings in payment of the price or rental. A revocable payroll deduction authorization in favor of a creditor is not forbidden by this section so long as the requisite notice is given to the consumer of his right to revoke.

Uniform Consumer Credit Code, 1968 Act, § 2.410 (official comments); Uniform Consumer Credit Code, 1974 Act, § 3.305. For an extended discussion of the Uniform Consumer Credit Code, *see* New Topic Service, Am.Jur.2d *Consumer and Borrower Protection* §§ 235–359 (1982).

Consumer Credit and Protection Act "represents a comprehensive attempt on the part of the Legislature to extend protection to the consumers and persons who obtain credit in this State and who obviously constitute the vast majority of our adult citizens." 162 W.Va. at 125, 246 S.E.2d at 275–76. In addition, the Court stated, "[w]e have no hesitation in stating that the Legislature intended to establish a clear and unequivocal public policy that consumers of credit covered by the Act were to be given protection." *Id.* 162 W.Va. at 125, 246 S.E.2d at 276. *See also State ex rel. Frieson v. Isner*, 168 W.Va. 758, 285 S.E.2d 641 (1981) (representation of clients in court by debt collectors is unauthorized practice of law); *Thomas v. Firestone Tire & Rubber Co.*, 164 W.Va. 763, 266 S.E.2d 905 (1980) (application of Act to anyone that collects debts).

Consistent with the above purpose is the rationale behind the enactment of the West Virginia Wage Payment and Collection Act as found at *W.Va.Code*, 21–5–1 *et seq.* As we stated in *Mullins v. Venable*, 171 W.Va. 92, 297 S.E.2d 866 (1982), "[t]he West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." 171 W.Va. at 94, 297 S.E.2d at 869. *See also Farley v. Zapata Coal Corp.*, 167 W.Va. 630, 281 S.E.2d 238 (1981).

Accordingly, *W.Va.Code*, 21–5–3 [1979], prescribes the required form of an assignment of earnings by an employee who voluntarily assigns future earnings to another in satisfaction of a debt. The United States District Court for the Southern District of West Virginia stated in *Western v. Hodgson*, 359 F.Supp. 194 (S.D.W.Va.1973), *aff'd*, 494 F.2d 379 (4th Cir.1974), that West Virginia, "in the exercise of its police power, was neither arbitrary nor unreasonable" when it enacted *W.Va.Code*, 21–5–3 [1979], and imposed restrictions on the ability of a creditor to receive an assignment of future earnings from an employee. 359 F.Supp. at 202. In *Western*, the court upheld the constitutionality of *W.Va.Code*, 21–5–3 [1979], as not being violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Reading these two statutes *in pari materia*, it would be inconsistent for this Court to exempt employers from the provisions of *W.Va.Code*, 46A–2–116 [1974] and *W.Va.Code*, 21–5–3 [1979], thereby relieving Clendenin of any responsibility under these statutes with respect to its employees.

The use of the word "deductions," as defined throughout these two statutes, is a clear demonstration by the legislature that it was contemplating employers when it imposed restrictions on the assignment of future earnings. While the word "deductions" may have many meanings, the Wage Payment and Collection Act, *W.Va.Code*, 21–5–1(g) [1981], defines "deductions" as "amounts required by law to be withheld, and amounts authorized for union or club dues, pension plans, payroll savings plans, credit unions, charities and hospitalization and medical insurance." Similar language appears in *W.Va.Code*, 46A–2–116(2)(b) [1974]. The types of matters included within the term "deductions" are those which are generally associated with employer/employee relationships. Therefore, we believe it is sound to conclude that employers are subject to *W.Va.Code*, 46A–2–116(2)(b) [1974], and *W.Va.Code*, 21–5–3 [1979].

Furthermore, the January 2, 1979, agreement between Carpenter and Clendenin is not the type of "deductions" that is exempt from the requirements of *W.Va.Code*, 21–5–3 [1979]. That section provides that "nothing herein contained shall be construed as affecting the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees...." As the definition of "deductions" clearly indicates, deductions are only those "amounts required to be withheld by law" or those amounts that fit into one of the specifically enumerated categories of common employment deductions. In the case before us, the January 2, 1979, agreement was an assignment of earnings by Carpenter to Clendenin calculated to reduce Carpenter's outstanding credit balance with Clendenin. That type of withholding does not meet the definition of "deductions" under *W.Va.Code*, 21–5–

1(g) [1981], or *W.Va.Code*, 46A–2–116(2)(b) [1974], because it is not one required by law nor does it fit into one of the exclusive categories as provided in the statutes. Therefore, the agreement between the parties is an assignment of wages under *W.Va.Code*, 46A–2–116(2)(b) [1974], that is subject to the form requirements of *W.Va. Code*, 21–5–3 [1979].

■ *W.Va.Code*, 21–5–3 [1979], specifies the requirements of a valid assignment of wages in West Virginia. It provides that to be valid, such an assignment shall (1) not extend beyond one year from the date of assignment or order, (2) be notarized, (3) specify the total amount due, (4) state upon its face that three fourths of the "personal earnings or wages" are exempt from assignment, and (5) contain the written acceptance of the assignor's employer which, in this case, is Clendenin. The assignment of wages that was executed on January 2, 1979, between Carpenter and Clendenin contains none of the above requirements, therefore, it is invalid and unenforceable.

■ For the foregoing reasons, we hold that the phrase "to another" as used in the definition of an assignment of earnings under *W.Va.Code*, 46A–2–116(2)(b) [1974], includes an employer when that employer is also the creditor of the employee. As such, the January 2, 1979, agreement between Carpenter and Clendenin in which Carpenter agreed to the withholding of $30.00 per pay period by Clendenin in satisfaction of his outstanding credit balance, was an assignment of earnings under *W.Va.Code*, 46A–2–116(2)(b) [1974], and did not meet the form requirements of *W.Va.Code*, 21–5–3 [1979]. The trial court, therefore, erred when it held as a matter of law and

fact that the January 2, 1979, agreement between the parties was not an assignment of earnings, thereby exempting it from the requirements of *W.Va.Code*, 21–5–3 [1979].

## II

Carpenter further contends that the trial court erred when it ruled as a matter of law and fact that the extension of credit from Clendenin to Carpenter was not an "open end credit plan" under the provisions of the Truth in Lending Act, *as amended*, 15 U.S.C. §§ 1601 *et seq.*, and Regulation Z, 12 C.F.R. §§ 226.1 *et seq.*, thereby exempting it from the disclosure requirements of 12 C.F.R. § 226.7 [1982].[5] In the letter opinion denying Carpenter's motion for partial summary judgment, the trial court reasoned as follows:

This conclusion is based upon the evidence already developed which demonstrates that there was no "privilege" in the Defendant to make installment payments. In this context, the word "privilege" is synonymous with "option" or "right". The circumstance that the Plaintiff did in fact forebear to sue upon this claim although it was in default, a forebearance which was not supported by any consideration, does not establish a credit plan or optional right in the Defendant to pay by installment. In other words, there was no agreement here which prevented the Plaintiff from initiating suit on this claim at any time after thirty days from the date of purchase.[6]

The definition of "open end credit," in effect at the time of the transactions in question, is found at 12 C.F.R. 226.2(x) and

**5.** Regulation Z is the common reference for the regulations promulgated pursuant to the Truth in Lending Act. Generally, its purpose is "to promote the informed use of consumer credit by requiring disclosures about its terms and cost." 12 C.F.R. § 226.1(b) (1982).

In addition, the regulations apply to those individuals or businesses that extend credit and meet the following four conditions:
(i) the credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly [as defined in 12 C.F.R. § 226.2(a)]; (iii) the credit is subject to a

finance charge or is payable by a written agreement in more than 4 installments; and (iv) the credit is primarily for personal, family, or household purposes.
12 C.F.R. § 226.1(c)(1) (1982). Specific exemptions may be found at 15 U.S.C. § 1603 (1982) and 12 C.F.R. § 226.3 (1982).

**6.** The record in this action contains numerous pretrial motions, discovery matters and supporting and opposing memoranda. The trial judge is to be complimented for his patience in regard thereto.

reads as follows:[7]

> "Open-end credit" means consumer credit extended on an account pursuant to a plan under which (1) the creditor may permit the customer to make purchases or obtain loans, from time to time, directly from the creditor or indirectly by use of a credit card, check, or other device, as the plan may provide; (2) the customer has the privilege of paying the balance in full or in instalments; and (3) a finance charge may be computed by the creditor from time to time on an outstanding unpaid balance.

See also Goldman v. First National Bank of Chicago, 532 F.2d 10, 17 n. 11 (7th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 340 (10th Cir.1973); Smith v. A & B Sales Co., Inc., 479 F.Supp. 477, 478 (N.D.Ga. 1979); Town & Country Co-Op v. Lang, 286 N.W.2d 482 (N.D.1979).

The record in this case contains various affidavits, exhibits and a deposition that were submitted to the trial court in support of Carpenter's motion for partial summary judgment. Carpenter asserts that a deposition of the credit manager of Clendenin indicates that there was no policy which required him to pay his credit balance within 30 or 90 days, rather, that it was the practice of Clendenin to allow installment payments. Although Clendenin asserts that it was not its credit policy to permit the "privilege" of making installment payments, the record indicates that Carpenter did, in fact, make installment payments upon his outstanding credit balance with Clendenin. See Plaintiff's Exhibit No. 9. The record shows that during the period from October 6, 1977 to April 13, 1978, Carpenter made numerous $20 to $30 payments on his credit account. In any event, the evidence is very ambiguous regarding the payment policy which Clendenin imposed on its credit customers and further inquiry concerning that policy is necessary.

Furthermore, three memoranda issued by Clendenin to its employees, which detailed its policy with respect to employee credit, appear to contradict the affidavit of the general manager of Clendenin when he stated emphatically that Clendenin "never did engage in 'revolving payment' plans, 'installment payment' plans or any other financing arrangement other than the regular terms of 'net 30 days....'" Specifically, as Carpenter points out, there is no clear statement in the credit memoranda that all goods purchased on credit from Clendenin must be paid before the end of a specified period of time. On the contrary, because of the consistent reference by Clendenin in these memoranda to the imposition of finance charges for accounts over 30 days old, we believe that the statements contained in the credit policies could easily lead a reasonable person to conclude that payment by installment is not prohibited.

Finally, the specific billing practices of Clendenin indicate that it was not expecting full payment of the credit balance before the expiration of a specified period. The face of the statement received by Carpenter states that a "finance charge will be computed on the adjusted balance" and that "to avoid additional finance charges, pay the 'new balance' before your billing date next month." The billing statement also contains the words that "payments, credits or charges received after your billing date 'this month' will appear on your next statement." Nowhere on the face of the statement does it state that the outstanding balance is due within a 30 or 90 day period. It could be concluded that as long as the debtor is willing to absorb a monthly finance charge, the outstanding credit balance may be deferred until the next billing period without any further penalty. We believe that the words which appear on the billing statement are indica-

---

7. Generally, the disclosure standards of Regulation Z depend upon the classification of the sales transaction. If a credit transaction falls under the definition of "open end credit plan," the substantive disclosure requirements are prescribed by Subpart B of the current Regulation Z. 12 C.F.R. §§ 226.5–226.16. On the other hand, if the transaction is characterized as a "closed end credit plan" or "other than open end credit plan," then the disclosure requirements are found in Subpart C of Regulation Z. 12 C.F.R. §§ 226.17–226.24.

tive that Carpenter may not have been precluded from making installment payments.[8]

■ In the case now before us we must determine whether the trial court was correct when it ruled that there was no genuine issue of fact and held that Carpenter did not possess the "privilege" of making installment payments under the credit terms with Clendenin which, in effect, excluded the credit transactions between the parties from the provisions of the Truth in Lending Act and Regulation Z. This Court held in syllabus point 1 of *Perlick & Co. v. Lakeview Creditor's Trustee Committee,* 171 W.Va. 195, 298 S.E.2d 228 (1982):

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 1, *Karnell v. Nutting,* 166 W.Va. 269, 273 S.E.2d 93 (1980) citing syl. pt. 3, *Aetna Casualty and Surety Co. v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

■ Upon a review of the record in this case, we conclude that there is a genuine issue of fact regarding the existence of a "privilege" of making installment payments in the credit relationship between Carpenter and Clendenin. Therefore, the trial court erred when it ruled as a matter of law and fact that Carpenter did not possess the "privilege" of making installment payments to Clendenin.

For the foregoing reasons, the final order of the Circuit Court of Roane County is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

8. It should be noted that the current Regulation Z no longer includes the existence of installment payments in the definition of "open end credit" because "the Board (Board of Governors of the Federal Reserve System) believed that a plan in which purchases are contemplated from time to time with finance charges imposed on the outstanding unpaid balance, would qualify as open-end credit, even though full payment is required at the end of each month." 1 R. Clontz, *Truth in Lending Manual* at 1–55 (5th ed. 1982). The current regulations define an "open end credit plan" as follows:

"Open-end credit" means consumer credit extended by a creditor under a plan in which:
  (i) The creditor reasonably contemplates repeated transactions;
  (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and
  (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.
12 C.F.R. § 226.2(a)(20) (1982).