**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**February 10, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MELISSA ROTRUCK,**
**Petitioner**

**vs.) No. 14-1284 (Mineral County Civil Action No. 12-C-135)**

**JANICE SMITH,**
**DOING BUSINESS AS INSURANCE QUEEN,**
**Respondent**

**MEMORANDUM DECISION**

Petitioner, Melissa Rotruck ("Ms. Rotruck"), by counsel Harley O. Staggers, Jr., appeals for the second time[1] the circuit court's denial of her motion for a new trial in this action brought under the West Virginia Wage Payment and Collection Act ("WPCA"). In the instant appeal, Ms. Rotruck asserts two errors. She first claims that the trial court failed to find that her employment contract with the respondent Janice Smith, dba Insurance Queen ("Insurance Queen"), defendant below, was illegal. In addition, Ms. Rotruck argues that Insurance Queen assigned wages without complying with W. Va. Code § 21-5-3(e) (2015) (Supp. 2015).[2] Insurance Queen, appearing *Pro Se*, filed a timely response.

This Court has considered the parties' briefs, the appendix record designated for our review, the pertinent authorities, and oral argument. We find no new or significant questions of law, and, upon application of the standard for our review, we find no prejudicial

---

[1]Ms. Rotuck's prior appeal, designated number 14-0104, resulted in this Court issuing an order dated October 15, 2014, that vacated the January 15, 2014, order of the circuit court, which had denied her motion for a new trial. This Court's order additionally remanded the case with instructions to the circuit court to enter a final order with findings and conclusions to address all of the issues that had been raised in Ms. Rotuck's petition for a new trial.

[2]The 2008 version of W. Va. Code § 21-5-3(e) was in effect at the time relevant to the instant matter. However, because the 2015 amendments to W. Va. Code § 21-5-3 did not alter subsection (e), we refer to the most current statute.

1

error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Neither party's appellate brief sets out a complete statement of relevant facts.[3] The basic facts ascertained from the record are that, on July 21, 2011, Ms. Rotruck was hired as a sales associate by Insurance Queen. In connection with her hiring, Ms. Rotruck signed a document setting out her job description. The document she signed expressly stated that she "[m]ust be licensed to sell insurance in the States determined by the [sic] management within 2 months of date of hire." With regard to Ms. Rotruck's compensation, the document stated that "Sales Associates are compensated by commissions or a small salary plus commission at a lower rate." During the trial, Ms. Rotruck acknowledged that she was to be compensated by commission only. She testified as follows:

> Q      Were you advised, during the interview, that you will be working as a commission only sales associate?
> A      Yes, ma'am.
> Q      So you were not expecting a salary?
> A      When I was first hired, when we discussed, when I [was] first hired, at that point, no I was not, it was commission only.
> Q      So just to clarify, you knew that it was commission only, no salary, when you were hired?
> A      That's what I was told.

It is undisputed that, prior to her discharge from employment, Ms. Rotruck never obtained a license as required by her hiring document, and she repeatedly misled Insurance Queen about her attempts to take the licensing test. Due to her failure to obtain a license to sell

---

[3]Pursuant to Rule 10(c)(4) of the West Virginia Rules of Appellate Procedure, the Petitioner's brief shall contain a "Statement of the Case. – Supported by appropriate and specific references to the appendix or designated record, the statement of the case must contain a concise account of the procedural history of the case *and a statement of the facts of the case that are relevant to the assignments of error*." (Emphasis added). Likewise, under Rule 10(d), "[t]he respondent's brief must conform to the requirements in subsection (c) of this Rule, except that no statement of the case need be made beyond what may be deemed necessary in correcting any inaccuracy or omission in the petitioner's brief. . . ."

insurance, Ms. Rotruck could not earn a commission pursuant to W. Va. Code § 33-44-4(a) (2001) (Repl. Vol. 2011).[4]

Although Ms. Rotruck could not lawfully earn a commission as a result of her own failure to obtain the necessary license,[5] she nevertheless received some compensation for her services from Insurance Queen during the course of her employment. In 2011, Ms. Rotruck received wages totaling $4,309.39, and she was paid a total of $3,079.00 in 2012. In addition, Insurance Queen provided Ms. Rotruck with financial assistance on occasion by filling her car with gas, paying for some of her medication, making her car payment on two occasions, and advancing her cash to cover emergencies ($100 in one instance and $500 in another). Ms. Rotruck was expected to reimburse these expenditures from her future earnings, and the amounts advanced were, in fact, deducted therefrom.

Ms. Rotruck's employment with Insurance Queen was terminated on April 6, 2012. The reasons for her discharge were set out in a termination letter as follows:

> 1. Not obtaining licenses in a timely manner as previously agreed in July 2011.
> 2. Unable to perform job duties including the completion of your insurance exam as per our agreement when you began your position. I will remind you that we attempted to work with you by modifying the requirement many times to accommodate your situation.

---

[4]Pursuant to W. Va. Code § 33-44-4(a) (2001) (Repl. Vol. 2011),

> [i]t is unlawful for any person to engage in any act which constitutes the transaction of insurance under the provisions of this article unless authorized by a license in force pursuant to the laws of this state, or unless exempted by the insurance laws of this state. Any person or insurer engaged in any act which constitutes the unauthorized transaction of insurance shall be subject to the provisions contained in chapter thirty-three [§§ 33-1-1 et seq.] of the code and the provisions and penalties set forth in this article.

[5]*See id.*

3

3.    Misleading your employer in regards to taking the P&C license exam [(Property and Casualty licensing examination)] on several occasions as confirmed by ExamFX.[6]

(Footnote added).

Following her termination, Ms. Rotruck filed a complaint under the WPCA against Insurance Queen. After conducting a bench trial, the circuit court found that Ms. Rotruck had failed to prove her claim and granted judgment as a matter of law[7] to Insurance Queen. Ms. Rotruck then filed a motion for a new trial, which the circuit court denied by order dated January 15, 2014. An appeal to this Court followed. By order dated October 15,

---

[6]According to the circuit court's December 18, 2013, order granting judgment as a matter of law in favor of Insurance Queen and dismissing the case with prejudice,

> Mrs. Rotruck repeatedly assured [Insurance Queen] that she was trying to obtain her license. She told [Insurance Queen] that she had failed the exam and had to take it over. . . . In early 2012 [Insurance Queen] learned that Mrs. Rotruck had missed multiple opportunities to take the test, which is given almost weekly. . . . As a result, on March 5, 2012, [Insurance Queen] suspended Mrs. Rotruck with the opportunity to keep her job if she passed the test within 30 days. When she still failed to take the test, she was terminated on April 6, 2012.

[7]The circuit court actually stated that it "directed a verdict" for Insurance Queen. We pause briefly to note that use of the term "directed verdict" was abandoned in favor of the phrase "judgment as a matter of law" in 1998 when the West Virginia Rules of Civil Procedure were amended. Under our current rules,

> [i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter *judgment as a matter of law* against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. . . .

W. Va. R. Civ. P. 52(c) (emphasis added). *See also* W. Va. R. Civ. P. 50 (addressing judgment as a matter of law in jury trials).

2014, this Court vacated the January 15, 2014, order of the circuit court and remanded the case with instructions to the circuit court to enter a final order with findings of fact and conclusions of law to address each of the issues that had been raised in Ms. Rotruck's petition for a new trial.[8] In response, the circuit court entered an order on November 14, 2014, titled "Amended Order Denying Plaintiff's Motion for a New Trial" (hereinafter "Amended Order"). This appeal followed.

With regard to this Court's review of a circuit court's order denying a motion for a new trial, it has been established that,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Bearing in mind the forgoing standard, we address Ms. Rotruck's two assignments of error in turn.

Ms. Rotruck's appellate brief is far from a model of clarity. Her first assignment of error could fairly be stated as asserting that the circuit court erred by denying her a new trial based upon the court's conclusion that she failed to establish her claim that her employment contract was an illegal contract. In a very befuddled manner, Ms. Rotruck appears to assert that, because she was hired on a commission-only basis for a sales position that required a license she did not posses, her employment contract was illegal insofar as she could obtain no earnings thereunder. Insurance Queen, responding *pro se*, merely asserts that, had Ms. Rotruck taken the licensing examination as the parties had agreed at the time of her hiring, she could have earned commissions.

The agreement between Ms. Rotruck and Insurance Queen stated in plain language that Ms. Rotruck, who was hired as a Sales Associate, would be "compensated by commissions or a small salary plus commission at a lower rate." In equally clear language, the contract specified that Ms. Rotruck "[m]ust be licensed to sell insurance in the States determined by the [sic] management within 2 months of date of hire." It is well established

---

[8]See note 1, *supra,* for additional details regarding Ms. Rotruck's prior appeal.

5

that "[i]f language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 101, 468 S.E.2d 712, 716 (1996). We find nothing illegal in the foregoing terms. Essentially, Ms. Rotruck was hired as a sales associate with a prerequisite that she obtain a license to sell insurance. Ms. Rotruck testified that she understood she was being hired on a commission-only basis[9] and that she expected no salary at the time of her hiring. She contends, nevertheless, that it was improper to hire her without compensation pending her procurement of the necessary license. In other words, she argues that it is unlawful to hire someone under a "commission only agreement if [the person] could not receive a commission." Ms. Rotruck has cited no authority from this Court or any other court in support of this argument. Indeed, there is no legal impediment to this type of hiring

---

[9]Before this Court, Ms. Rotruck additionally asserts, without developing any argument, that commission-only contracts are, in general, illegal. We decline to address this issue as it has been waived. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority . . . are not considered on appeal."); *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) ("[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal."); *State, Dep't of Health & Human Res. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("'A skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991))).

Moreover, this issue was not properly raised below. The circuit court expressly noted in its Amended Order that "Plaintiff did not raise this argument at trial and does not cite any legal authority in support of this proposition." It is axiomatic that, "[i]n the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syl. pt. 1, *Mowery v. Hitt*, 155 W. Va. 103, 181 S.E.2d 334 (1971). *See also* W. Va. R. App. P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal.").

arrangement.[10]  Within professions that require licensure, it is a common practice to hire individuals pending their acquisition of the necessary license.

The only reason Ms. Rotruck was not paid a commission was her own failure to secure the necessary license.  Indeed, in its order entered following the trial of this matter, the circuit court found that

> [a] key point in this case was that Mrs. Rotruck was informed that she had to pass the test in order to be able to be paid a commission and to be a significant asset to the business. Mrs. Rotruck promised to prepare for the exam and take it as soon as possible.  The job description signed by Mrs. Rotruck on July 21, 2011, contained a provision stating that she must obtain a license "within two months of the date of hire."

Thus, the evidence presented indicates that Ms. Rotruck, who apparently had no prior experience in the insurance industry, worked for Insurance Queen in advance of obtaining her license to sell insurance in order to learn the insurance business.  Insurance Queen anticipated that Ms. Rotruck would promptly obtain her license to sell insurance and become a productive employee of the company.  This scenario is no different from an internship where an individual volunteers to work for little or no compensation in order to gain valuable

---

[10]Assuming, *arguendo*, that Ms. Rotruck's employment contract was illegal, then the contract simply is unenforceable.  *See* Syl. *Ben Lomond Co. v. McNabb*, 109 W. Va. 142, 153 S.E. 905 (1930) ("A court of equity will not, at the instance of the original parties or others claiming under them, enforce a contract entered into to accomplish a fraudulent or illegal purpose."); *Dorr v. Chesapeake & O. Ry. Co.*, 78 W. Va. 150, 157, 88 S.E. 666, 668 (1916) ("An illegal contract is as a rule void–not merely voidable–and can be the basis of no judicial proceeding.  No action can be maintained upon it, either at law or in equity.  This impossibility of enforcement exists whether the grant is illegal in its inception or whether, being valid when made, the illegality has been created by subsequent statute. . . .  If a contract is tainted with the vice of illegality, it is held to create no obligation, not from any consideration of the individual rights of the parties, who may be equally in fault, but from regard for the public.  Generally, the illegality of a contract is a perfect defense to its enforcement, because the law will not require one to do, or punish him for not doing, that which it forbids him to do." (internal quotations and citations omitted)).

knowledge and experience.[11]   Accordingly, we find no error in the circuit court's ruling denying Ms. Rotruck a new trial with respect to this issue.

Ms. Rotruck next argues that she is entitled to a new trial because the circuit court "incorrectly interpreted the West Virginia Wage Payment and Collection Act's prohibition against wage assignments by employees to pertain to only consumer credit transactions where the employer is a creditor."  Ms. Rotruck contends that advances made to her by her employer,[12] which were subsequently withheld from her pay, were wage assignments.  Insofar as the alleged wage assignments did not comply with the provisions of W. Va. Code § 21-5-3(e), Ms. Rotruck claims the wage assignments are unenforceable.

In addressing this issue, the circuit court applied *Clendenin Lumber & Supply Co., Inc. v. Carpenter*, 172 W. Va. 375, 305 S.E.2d 332 (1983), and concluded that there can be an assignment to an employer only when the employer is a creditor under the West Virginia Consumer Credit and Protection Act.  The circuit court found that Ms. Rotruck failed to establish that Insurance Queen was a creditor.  We agree with the circuit court's analysis of this issue.

Addressing the question of whether there had been an assignment of wages between an employer and an employee, the Court in *Clendenin Lumber* observed that the wage assignment provisions of the WPCA and the Consumer Credit and Protection Act ("CCPA") must be read *in pari materia*: "[i]nasmuch as *W. Va. Code*, 46A-2-116 [(1996)], and *W. Va. Code*, 21-5-3 [(2015)], relate to assignment of earnings, they are to be construed together . . . ." 172 W. Va. at 379, 305 S.E.2d at 336.  *See also Farley v. Zapata Coal Corp.*, 167 W. Va. 630, 636-37, 281 S.E.2d 238, 243 (1981) ("It is well established in West Virginia that when two statutes relate to the same general subject and the two statutes are not in conflict, they are to be read in *pari materia*."); Syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded *in pari materia* to assure recognition and implementation

_____

[11]Although Ms. Rotruck was hired on a commission-only basis, she was compensated for some services she provided to Insurance Queen.  In 2011, Ms. Rotruck worked approximately five months and received wages totaling $4,309.39.  She was paid a total of $3,079.00 for her three months of employment in 2012.

[12]The advances to which Ms. Rotruck refers are the occasional instances where Insurance Queen provided Ms. Rotruck financial assistance by filling her car with gas, paying for some of her medication, making her car payment on two occasions and advancing her cash to cover emergencies ($100 in one instance and $500 in another).

of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly."). *Accord* Syl. pt. 6, *Community Antenna Serv., Inc. v. Charter Commc'ns VI, LLC*, 227 W. Va. 595, 712 S.E.2d 504 (2011).

The WPCA contains certain requirements applicable to the assignment of earnings,[13] but it does not define the term.[14] The term "assignment of earnings" is, however, defined in the CCPA as follows:

> "Assignment of earnings" includes all forms of assignments, deductions, transfers, or sales of earnings *to another*, either as payment or as security, and whether stated to

---

[13]Under W. Va. Code § 21-5-3(e),

> [n]o assignment of or order for future wages shall be valid for a period exceeding one year from the date of the assignment or order. An assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and any order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided, That no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon: Provided, however, That nothing herein contained shall be construed as affecting the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees.

[14]This lack of definition provides the necessary ambiguity to require that the aforementioned statutes be read and construed together. *See State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*, 234 W. Va. 238, 249, 764 S.E.2d 769, 780 (2014) ("The *in pari materia* rule of statutory construction applies only when a statute is ambiguous."); Syl. pt. 1, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous.").

be revocable or nonrevocable, and includes any deductions authorized under the provisions of section three [§ 21-5-3], article five, chapter twenty-one of this code, except deductions for union or club dues, pension plans, payroll savings plans, charities, stock purchase plans and hospitalization and medical insurance.

W. Va. Code § 46A-2-116(2)(b) (1996) (Repl. Vol. 2015) (emphasis added). Based upon this definition, the *Clendenin Lumber* Court was tasked with deciding whether the phrase "to another" includes an employer. The *Clendenin Lumber* Court observed generally that the CCPA was enacted "to modernize and clarify the law regarding consumer sales and credit transactions. Specifically, article 2 regulates, *inter alia*, the practice of creditors regarding credit and debt collection practices in consumer credit transactions." *Clendenin Lumber*, 172 W. Va. at 379, 305 S.E.2d at 336. In furtherance of this general purpose, and as a result of its analysis of the relevant statutory provisions, the Court then held: "The phrase 'to another' as used in the definition of an assignment of earnings under *W. Va. Code*, 46A-2-116(2)(b) [(1996)], includes an employer *when that employer is also the creditor of the employee*." Syl. pt. 1, *Clendenin Lumber* , 172 W. Va. 375, 305 S.E.2d 332 (emphasis added). Thus, under *Clendenin Lumber*, an employer is subject to the wage assignment requirements of W. Va. Code § 21-5-3(e) only when the employer also is a creditor of its own employee.

Applying *Clendenin Lumber*, the circuit court in the case *sub judice* correctly determined that, unlike the employer in *Clendenin Lumber* who engaged in the sale of commercial products to its own employees in consumer credit transactions, Insurance Queen was not a creditor of Ms. Rotruck. We agree. Pursuant to the CCPA, a "consumer credit sale" is defined in relevant part as "a sale of goods, services or an interest in land in which: (i) Credit is granted either by *a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card . . . .*" W. Va. Code § 46A-1-102(13)(a) (1996) (Repl. Vol. 2015) (emphasis added). There is nothing in the record to indicate that Insurance Queen's advances to Ms. Rotruck qualify as a consumer credit sale. Likewise, the advances did not qualify as a "consumer loan" insofar as there is nothing in the record to indicate that Insurance Queen "regularly engaged in the business of making loans." W. Va. Code § 46A-1-102(15) (defining "Consumer loan").

Rather than being consumer credit transactions or consumer loans, the advances to Ms. Rotruck by Insurance Queen appear to be more akin to salary advances graciously provided in response to Ms. Rotruck's financial need. Under these circumstances, the circuit court correctly concluded that the advances by Ms. Rotruck's employer, Insurance Queen, were not wage assignments. Accordingly, we find that the circuit court did not err in denying Ms. Rotruck a new trial on this issue.

Based upon the forgoing analysis, we affirm the November 14, 2014, order of the Circuit Court of Mineral County denying Ms. Rotruck's motion for a new trial.

Affirmed.


**ISSUED:  February 10, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II