412 S.E.2d 792

**Fernando CASILLAS and Mireille Casillas, Plaintiffs Below, Appellants,**

**v.**

**TUSCARORA LAND COMPANY and First National Bank of Greencastle, Defendants Below, Appellees.**

**No. 19986.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1991.

Decided Dec. 19, 1991.

**392**

Richard G. Gay, Berkeley Springs, for appellants.

Michael L. Scales, Askin, Pill, Scales & Burke, Martinsburg, for appellees.

BROTHERTON, Justice:

The appellants, Fernando and Mireille Casillas, appeal the April 3, 1990, order of the Circuit Court of Morgan County which granted the appellees' motion for a directed verdict.

On June 1, 1983, the appellants contracted to buy a lot in the Cacapon District in Morgan County from the appellee, the Tuscarora Land Company. The lot purchased included a chalet, and the purchase price was $50,850. Pursuant to the contract, Tuscarora, through its agents, completed construction on the chalet at a location which was selected by the Tuscarora Land Company. The sale was closed on June 4, 1983, at which time the Casillas made a down payment of $12,550, with the balance to be financed by a note and deed of trust executed on June 21, 1983, in the amount of $39,460.80.

The deed of trust and note executed by the Casillas to Tuscarora was assigned to the First National Bank of Greencastle on December 1, 1983. At that date, $38,000 was due as the principal sum. Over the life of the loan, the bank was due $63,-288.16. From January 24, 1977, through April 9, 1987, Tuscarora had assigned one hundred seventy-four similar loans to the bank. Tuscarora sold the lot, constructed the house, financed the cost, less the down payment, and, with an understanding with the First National Bank of Greencastle, realized its money by selling the note and trust deed to the bank.

At the time of the purchase of the lot, the Casillas and two of their friends inquired of Tuscarora as to whether or not the property was located in a floodplain and whether the property had ever flooded before. Company president Dwayne Dillard affirmatively stated that the property had not flooded in the area where the cabin was to be constructed and stated that no flooding had ever occurred there. However, the Casillas contend that Dillard had been advised by the previous owner that the lot had flooded repeatedly and was located in a floodplain.[1]

On November 5, 1985, a major flood occurred along the Cacapon River. The flood relocated the cabin and its contents approximately one-half mile down river against a bridge abutment, which totally destroyed the cabin and its contents. Also destroyed was landscaping that had recently been completed and furnishings within the chalet.

The Casillas filed suit against Tuscarora and the bank for breach of duty, a common law negligence and concealment theory, along with common law fraud. The bank filed an amended answer on March 13, 1990, and raised the affirmative defense that all claims against the bank were barred by the West Virginia Consumer Credit and Protection Act, W.Va.Code § 46A-1-101 et seq. (1986) (hereinafter referred to as the Act).

At the end of a four-day jury trial, the judge granted a motion for a directed verdict for the bank, stating:

> It appears to the Court that this case arises from the destruction of the plaintiff's cabin by a flood in 1985. No flood insurance had been required by the defendant Tuscarora nor by the defendant First National Bank of Greencastle.

---

1. Evidence adduced at trial from a United States geological survey indicated that the property had a flooding reoccurrence history from 1936 until 1983, generally flooding at a frequency of every sixteen years at a flood stage level or above.

There is an issue of fact in the Court's mind as to whether First National Bank of Greencastle was for purposes of the statute [46A–1–101 et seq.] the lender or the holder in due course or an assignee. The Court believes that that is a jury question.

But the legal effect would appear to be the same; 46A–2–101(8) is the statute dealing with claims against holders and 46A–2–102(8) which deals with claims against assignees and 46A–2–103(8) which deals with claims against the lenders contain the same language essentially and that language is in the case of a lender that notwithstanding any provisions of this section, a lender shall not be subject to any claim or defense arising from or growing out of personal injury or death resulting therefrom or damage to property. Since the claim of negligence and fraud against First National Bank of Greencastle arises from or grows out of damages to property, a directed verdict must be granted.[2]

In reaching its directed verdict conclusion, the court held that it was a jury question as to whether the bank was a "holder", "assignee", or "lender," but stated the legal effect was the same under W.Va.Code §§ 46A–2–101(8), 102(8), and 103(8). It is from the judge's directed verdict order that the Casillas file this appeal.

The Casillas argue that their claim was based upon common law negligence and common law fraud and did not arise out of any claims for personal injury or death or damage to property as contemplated by W.Va.Code §§ 46A–2–101(8), 102(8), and 103(8). Further, they did not plead the Act when bringing this action, and thus the lower court erred in directing a verdict based upon W.Va.Code §§ 46A–2–101(8), 102(8), and 103(8). Consequently, the issue before this Court is whether the Act bars a party's right to bring a common law claim in negligence and fraud.

Consumer protection acts were developed as a result of inequitable situations where consumers, who were defrauded by a company, were required to continue making payments on a note simply because the seller who defrauded the customer had passed the financing of the note on to a third party. While the situation the consumer protection acts were aimed to solve is on point with this case, the facts are somewhat backwards. This is not a case of a consumer attempting to use the Consumer Credit and Protection Act, but instead a creditor who claims its protection independent of the consumer's complaint.[3]

In 1974, the West Virginia Legislature passed a comprehensive consumer protection bill known as the West Virginia Consumer Credit and Protection Act. In *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), this Court explained that the Act "represents a comprehensive attempt on the part of the legislature to extend protection to the consumers and persons who obtain credit in this State and who obviously constitute the vast majority of our adult citizens." *Id.* 162 W.Va. at 125, 246 S.E.2d at 275–76. "We have no hesitation in stating that the Legislature intended to establish a clear and unequivocal public policy that consumers of credit covered by the Act were to be given protection." *Id.* 162 W.Va. at 125, 246 S.E.2d at 276. *See also,* Cardi, *The West Virginia Consumer Credit and Protection Act,* 77 W.Va.L.R. 401 (1975). The Act is a "unique compilation of consumer protection concepts. It is a hybrid of the Uniform Consumer Credit Code and the National Consumer Act and some sections from then-existing West Virginia law ... 'this Act recognizes the potential for hardship for a consumer and his dependents which may result from a disruption of the steady flow of family income.'" *Clendenin Lumber & Supply Co. v. Carpenter,*

---

**2.** The jury returned a verdict against Tuscarora in the amount of $88,189 for compensatory damages and $200,000 in punitive damages for fraud relating to the misrepresentation by Tuscarora and its agents regarding the flooding. However, Tuscarora is insolvent.

**3.** *See* Cardi, *The West Virginia Consumer Credit & Protection Act,* 77 W.Va.L.R. 401, 502 (1975).

172 W.Va. 375, 305 S.E.2d 332, 336, n. 4 (1983).

The West Virginia Consumer Credit and Protection Act does not preclude claims brought at common law against assignees, holder, or lenders.[4] West Virginia Code § 46A–2–101(3) and § 46A–2–102(3) provide that nothing in those sections "shall be construed as affecting any buyer's or lessee's right of action, claim or defense which is otherwise provided for in this Code or at common law." The legislative history of the Act makes it clear that the purpose of creating the Act was because so many consumers failed to accomplish any results at common law against creditors. In this case, however, the Casillas are directly alleging misconduct by the bank in a common law action of fraud and misrepresentation. At no point did they file suit under the provisions of the Act. The Act controls recoveries that can be obtained by a consumer against an assignee, a lender, or a holder by subjecting them to the claims and defenses that the consumer has against the seller. W.Va.Code §§ 46A–2–101(5), 2–102(5), and 2–103(2). Nothing within the Act's limitation of liability provisions provides immunity at common law for the misconduct of a lender, assignee, or holder which results in damages.

Consequently, we conclude that a common law action of fraud may be maintained against a lender, assignee, or holder where direct allegations of fraud or misrepresentation exist separate from the Act. The defenses of the West Virginia Consumer Credit and Protection Act are not available to either party under the common law action. In the case now before us, the court directed the verdict using the wrong theory—the West Virginia Consumer Credit and Protection Act. In light of this, we reverse the decision of the Circuit Court of Morgan County granting a directed verdict and remand the case to the trial court for further development of the facts consistent with this opinion.

Reversed and remanded.

---

**4.** West Virginia Code § 46A–2–102(7) provides limitations on liability:

> ... [A]ny claim or defense founded in fraud, lack or failure of consideration or a violation of the provisions of this chapter as specified in section one hundred one [§ 46A–5–101], article five of this chapter, may be asserted by a buyer or lessee at any time, subject to the provisions of this Code relating to limitation of actions.

*See also* W.Va.Code §§ 46A–2–101(5), 102(5), and 103(2), which subject an assignee, a holder, or a lender to all the claims and defenses arising from the consumer transaction that the buyer has against the seller.

West Virginia Code § 46A–5–101(1) identifies the consequences of fraudulent, illegal, or unconscionable behavior:

> If a creditor has violated the provisions of this chapter applying to ... illegal, fraudulent or unconscionable conduct (§ 46A–2–121) ... the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.... With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.