# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 20-0684

_____

FILED
November 22, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

FAIRMONT TOOL, INC.,
Petitioner

v.

ADAM J. DAVIS, Individually and
on Behalf of Those Similarly Situated,
Respondent

_____

Appeal from the Circuit Court of Marion County
The Honorable David R. Janes, Judge
Civil Action No. 17-C-163

AFFIRMED

_____

Submitted: October 6, 2021
Filed: November 22, 2021

J. Robert Russell, Esq.
David L. T. Butler, Esq.
Shuman McCuskey Slicer PLLC
Morgantown, West Virginia
Counsel for the Petitioner

James B. Stoneking, Esq.
Jonathan R. Marshall, Esq.
Bailey & Glasser LLP
Charleston, West Virginia
Matthew B. Hansberry, Esq.
Hansberry Law Office, PLLC
Bridgeport, West Virginia
Counsel for the Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

**CHIEF JUSTICE JENKINS and JUSTICE ARMSTEAD dissent and reserve the right to file separate opinions.**

**SYLLABUS BY THE COURT**

1. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

3. Under the Wage Payment and Collection Act, West Virginia Code §§ 21-5-1(o) (2021) and 21-5-3 (2021), an "assignment of wages" is the transfer of the right to collect future wages from the wage earner to the employer. An assignment of wages is, in effect, any amount that an employer withholds from an employee's wages that does not meet the Act's definition of "deductions" in West Virginia Code § 23-5-1(g) (2021).

4. "Based on the legislative history of the Wage Payment and Collection Act, *W.Va. Code*, 21-5-1 *et seq*[.] [1979], compliance with all requirements of the Act is mandatory when assigning an employee's wages." Syl. pt. 4, *Jones v. Tri-County Growers, Inc.*, 179 W. Va. 218, 366 S.E.2d 726 (1988).

5. "A circuit court is afforded wide discretion in determining whether or not a party should be relieved of a stipulation, and such decision should not be set aside absent an abuse of discretion." Syl. pt. 6, *W. Va. Dep't of Transportation v. Veach*, 239 W. Va. 1, 799 S.E.2d 78 (2017).

i

6. "An employee who succeeds in enforcing a claim under W. Va. Code Chapter 21, article 5 should ordinarily recover costs, including reasonable attorney fees unless special circumstances render such an award unjust." Syl. pt. 3, *Farley v. Zapata Coal Corp*., 167 W. Va. 630, 281 S.E.2d 238 (1981).

7. "Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).

**HUTCHISON, Justice**:

In this appeal from the Circuit Court of Marion County, we consider a series of orders entered under the West Virginia Wage Payment and Collection Act, W. Va. Code § 23-5-1 to -18 ("the WPCA"). The Legislature designed the WPCA to require an employer to regularly pay employees their full wages and restrict an employer's ability to withhold a portion of employees' paychecks. In this appeal, we examine one such heavily regulated withholding: the authorized wage assignment. For an employee to properly assign wages to an employer, the WPCA specifies that there must be a writing that meets a list of conditions, and in the absence of any one of these conditions the assignment is invalid and unenforceable. For instance, the writing must identify the total amount due to and collectible by the employer through withholdings. The writing must contain statements that the assignment will not be in effect for more than one year and that three-fourths of the employee's wages are exempt from the assignment. And, the writing must show the assignment was accepted and signed by the employer. *See* W.Va. Code § 21-5-3(e) (2021). Prior to June 17, 2021, the WPCA also required written assignments to be notarized. *See* W.Va. Code § 21-5-3(e) (2008, 2015, and 2018).

In the instant case, an employer made withholdings from the wages of its employees that met the WPCA's definition of an assignment, but never procured from its employees a writing that complied with the conditions set in the WPCA. After an employee filed a class-action suit to recoup those withholdings, the employer entered into a written agreement stipulating to the method the circuit court would use to calculate certain

1

damages if the circuit court declared the withholdings violated the WPCA. Thereafter, the circuit court entered an order finding the employer liable for violating the WPCA. In light of the stipulations on damages, the circuit court later entered orders that awarded the employees the wages improperly taken from their paychecks, liquidated damages, attorney's fees, and costs. The employer now appeals the circuit court's orders.

As we discuss below, we find no error and affirm the circuit court's rulings.

## I. Factual and Procedural Background

Defendant Fairmont Tool, Inc., provides services to the oil and gas industry, often at the well pads of clients. Because of the hazardous nature of the work, the company requires employees to wear special equipment such as fire-retardant uniforms and safety boots. Fairmont Tool employs between 75 and 120 workers, depending on market demand. Plaintiff Adam J. Davis began working for Fairmont Tool in 2014 but, on January 3, 2017, Fairmont Tool terminated him from his employment.

On May 31, 2017, the plaintiff filed this lawsuit against Fairmont Tool. The plaintiff contended that Fairmont Tool unlawfully reduced his wages and the wages of other similarly situated employees, and he asked that the circuit court certify a class action. Specifically, he alleged that Fairmont Tool, in the five years prior to the filing of the

complaint, had improperly taken assignments in the form of paycheck deductions[1] for uniforms, boots, tools and other protective equipment in violation of the West Virginia Wage Payment and Collection Act ("the WPCA").[2]

Fairmont Tool quickly admitted to making reductions to employees' paychecks. In an interrogatory, the plaintiff asked whether Fairmont Tool had subjected employees' pay to deductions for uniforms, boots, or other protective equipment in the five years prior to the filing of the complaint. On August 21, 2017, Fairmont Tool answered that it

> has and does make certain deductions from some of its employees' paychecks where the employees have voluntarily agreed to participate in a uniform service provided by a third-party vendor or have voluntarily charged boots or tools on Defendant's account, and with Defendant's consent, from a third-party vendor.

In a deposition, the president of Fairmont Tool also admitted the company made deductions from employees' pay for "boots," "uniforms," and other merchandise. During discovery, the company produced spreadsheets documenting hundreds of deductions from employees' paychecks for uniforms and "MDSE (Merchandise)."

---

[1] Throughout this opinion we use "deduction" in its general sense, as something taken away or subtracted from an employee's wages. We note, however, that "deductions" also has a meaning set by statute, one we discuss later in this opinion. *See* W. Va. Code § 21-5-1(g) (2021).

[2] The plaintiff's complaint contained a second count asserting that Fairmont Tool violated the WPCA by failing to pay him, individually, 80 hours of vacation pay. The parties later settled and agreed to the dismissal of that count.

Also on August 21, 2017, Fairmont Tool responded to the plaintiff's request for production of documents. The plaintiff asked Fairmont Tool to produce, for the five-year period preceding the filing of plaintiff's complaint, "a complete copy of all written wage assignments" permitting Fairmont Tool to make deductions from its employees' paychecks for uniforms, boots, tools, or other merchandise. Fairmont Tool responded, "None."

Nine months later, Fairmont Tool amended its response to the plaintiff's request for production of documents. The company asserted that the deductions were not "an assignment of wages pursuant to the West Virginia [Wage] Payment and Collection Act. Consequently, it is the position of Fairmont Tool, Inc. that it does not possess any 'written wage assignments' with regard to its employees." However, Fairmont Tool then provided forty documents, each signed by a different employee between February 2015 and October 2017 and titled "Wage Deduction Authorization Agreement," which said:

> I understand and agree that my employer, Fairmont Tool (the Company), may deduct money from my pay from time to time for reasons that fall into the following categories: . . .
>
> 3. Installment payments on items purchased on my behalf by the Company (e.g. boots) or cash advances given to me by the Company; and, if there is a balance remaining when I leave the Company, the balance of such purchases or advances[.]

None of these forty writings was signed by the plaintiff; none contains language saying the agreement will not be in effect for more than one year; none specify the total amount to be collected by the employer; none say that three-fourths of the employee's paycheck will be

4

exempt from deductions; none are signed by a representative of Fairmont Tool; and none are notarized.

On April 25, 2018, after substantial negotiation between counsel for the parties, a document was filed with the circuit court titled "The Parties' First Set of Stipulations." The stipulations were signed that same day by counsel for the plaintiff and for Fairmont Tool. In this document, Fairmont Tool admitted that in the five years between July 1, 2012, and July 31, 2017, it had deducted money directly from employees' paychecks to cover boots, uniforms, tools and other merchandise described by Fairmont Tool as "MDSE."

In the stipulations, the parties preserved their rights to argue whether the deductions from the employees' paychecks were unlawful assignments of wages under the WPCA. However, and important to this appeal, the stipulations contain the parties' agreement as to how the circuit court would calculate damages, if the circuit court determined that the deductions were unlawful wage assignments. The parties' agreement provides that if the circuit court found that Fairmont Tool was liable for any "reductions to wages that occurred during the period from July 1, 2012, through June 10, 2015," then the circuit court would award liquidated damages "in the amount of three times each such reduction to wages" for that time period. Further, if Fairmont Tool was liable for any "reductions to wages that occurred during the period from June 11, 2015, through July 31, 2017," then the parties agreed that the circuit court was required to award liquidated damages equal to two times the reduction to wages that occurred in that time period.

5

Finally, the parties stipulated that if Fairmont Tool were found liable, then the circuit court could award the plaintiff his attorney's fees and costs.

After agreeing to the stipulations, Fairmont Tool hired new counsel who promptly moved to withdraw from or rescind the agreement. The circuit court denied the motion. Fairmont Tool asked the circuit court to reconsider its ruling, but the circuit court ruled that no basis for a motion to reconsider exists under the law and that no good cause existed to disturb its prior ruling.

The plaintiff filed a motion for class certification. After briefing and argument by the parties, the circuit court entered orders conditionally certifying a class of current and former employees of Fairmont Tool. The class was defined as:

> For the period from July 1, 2012, through July 31, 2017: All persons currently and/or formerly employed by the Defendant Fairmont Tool, Inc. in West Virginia who are not shareholders of Fairmont Tool, Inc. and who had their wages owed by Fairmont Tool, Inc. reduced by Fairmont Tool, Inc. relative to uniforms, model uniforms, and/or purchases categorized by Fairmont Tool, Inc. as MDSE, inclusive of, but not limited to, the purchase of boots and tools.

After mailing notices to prospective class members, 136 members agreed to join the class; 43 current and former employees declined to join.

The plaintiff subsequently moved for partial summary judgment. On June 21, 2019, the circuit court entered an order granting that motion with regard to the liability of Fairmont Tool. The court noted that the WPCA requires employers to pay employees their full wages, but it permits employees to assign a part of their wages to an employer if

6

the assignment meets certain narrow, clearly defined conditions. In that regard, West Virginia Code § 21-5-3(e),[3] required any assignment of wages by an employee to an employer to: (1) be in writing; (2) not be in effect for more than one year after the date of the assignment; (3) specify the total amount due to and collectible by the employer; (4) state that three-fourths of the employee's wages were exempt from the assignment; (5) be accepted by and signed by the employer; and (6) be notarized. In the absence of any one of these requirements, the assignment was invalid and unenforceable.

The circuit court found no genuine issue of material fact that Fairmont Tool paid its employees less than the full amount of their wages because it made reductions to its employees' paychecks for uniforms, boots, tools, and other items it categorized as "MDSE." Furthermore, the circuit court found that Fairmont Tool could not produce any valid, written wage assignment satisfying the requirements of West Virginia Code § 21-5-3(e) showing that either the plaintiff or the other class members had properly authorized these reductions to their wages. Thus, the circuit court concluded that, as a matter of law, the reductions by Fairmont Tool had violated the WPCA's prohibition against unauthorized

---

[3] Because the plaintiff alleged improper wage deductions occurred between July 2012 and July 2017, we find that the question of whether those deductions were improper wage assignments is controlled by two versions of West Virginia Code § 21-5-3(e) in effect for that time period: the first version was adopted in 2008, the second in 2015. These two versions are, with the exception of the deletion of a comma in 2015, identical. Further, as we have previously noted, the Legislature significantly amended West Virginia Code § 21-5-3 in 2021, in part, to delete the requirement that an assignment be notarized. However, no amendments were made that affect this appeal.

wage assignments. The circuit court therefore granted partial summary judgment and found Fairmont Tool liable under the WPCA.

The plaintiff then moved for summary judgment on damages. On November 7, 2019, the circuit court granted that motion and awarded damages in the form of lost wages and liquidated damages. As to lost wages, the circuit court found that Fairmont Tool had improperly withheld $87,731 from employees' paychecks. As to the calculation of liquidated damages, the circuit court turned to the agreement regarding those damages contained in the parties' stipulations. The circuit court found that the purpose of the agreement "was to afford the parties a degree of certainty as to the potential nature and extent of WPCA damages[.]" The circuit court then followed the parties' stipulations, doubled or trebled portions of the lost wages according to when the improper withholdings occurred, and assessed liquidated damages of $237,998 against Fairmont Tool. Combined, the total damages award was $325,728.

The circuit court entered a final judgment order on August 3, 2020. In that order, the circuit court restated its orders finding Fairmont Tool liable for violating the WPCA and awarding $325,728 in damages. The circuit court then awarded the plaintiff his attorney's fees in the amount of $160,000 and his litigation costs of $21,518.14. Finally, the plaintiff, acting as the class representative, was awarded a service fee of $5,000.

Fairmont Tool now appeals the circuit court's final judgment order.

8

## II. Standard of Review

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).  We review an order granting summary judgment according to the same standards as the circuit court: "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Further, to the extent the parties' arguments ask us to interpret any statutes, our review remains de novo.  Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.,* 195 W. Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

## III. Discussion

Before turning to the panoply of assertions in Fairmont Tool's briefs to this Court, we must first point out that its opening brief failed to comply with Rule 10(c)(3) of the West Virginia Rules of Appellate Procedure.  Rule 10(c)(3) requires that a petitioner's brief "open[] with a list of the assignments of error that are presented for review, expressed in terms and circumstances of the case but without unnecessary detail."  An assignment of error succinctly identifies the point at which the petitioner believes the lower court stumbled.  *Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Va.*, 859 S.E.2d 438, 444 (W.

9

Va. 2021) (quoting *Wilson v. Kerr*, No. 19-0933, 2020 WL 7391150, at *3 (W. Va. Dec. 16, 2020) (memorandum decision)). When the petitioner properly opens a brief with a list of the assignments of error, the respondent can focus the arguments in opposition "confident that he did not fail to discern a determinative argument buried in petitioner's prose." *Id.* Moreover, a clearly defined list of errors permits this Court to focus with clarity on the legal questions the petitioner alleges affected the lower tribunal's decision. A party seeking relief should not, through poor draftsmanship, force this Court to tease out the imperative questions of law.

Instead of opening with a list of assignments of error, the petitioner's brief begins with a "lengthy, free-flowing argument," *id.*, that mixes recitations of fact with arguments and conclusory statements about the respondent's and circuit court's motivations. This "throwing-spaghetti-at-the-wall-to-see-what-sticks" approach in the petition resulted in a response brief that "while written well . . . is structured in a 'whack-a-mole' format that tries to address the varied contentions sprinkled throughout" Fairmont Tool's brief. *Id.*

However, while Fairmont Tool's brief does not contain assignments of error, the argument section of the brief does contain headings that we can construe as assignments of error. From these headings, we perceive that Fairmont Tool has raised four arguments.[4]

---

[4] Unfortunately, Fairmont Tool's headings do not precisely correspond to the arguments that follow. For instance, one heading insists, verbatim, that "the circuit court erred in awarding attorney fees, costs and service award to plaintiff." The argument that

Continued . . .

First, Fairmont Tool maintains the circuit court erred in granting partial summary judgment to the plaintiff on the question of liability when it found that the deductions from employee paychecks were "assignments of earnings" in violation of the WPCA. Second, Fairmont Tool asserts that the circuit court erred when it relied upon the parties' agreed-upon method for calculating liquidated damages outlined in the parties' stipulations. Third, Fairmont Tool contends the circuit court erred when it refused to allow it to pursue a counterclaim against its employees. Fourth, and finally, Fairmont Tool challenges the way the circuit court calculated the award of attorney fees and costs.

We examine these arguments in turn and, where necessary, provide additional facts and standards of review to put the arguments in context.

## A. Assignments of Earnings

Fairmont Tool's first argument is that the circuit court erred when it granted partial summary judgment to the plaintiffs and found that the company's withholdings from its employees' paychecks were "assignments of earnings" in violation of the WPCA. Because Fairmont Tool asserts that its withholdings were not "assignments of earnings," we must consider the meaning of that phrase as it is used in the WPCA.

---

follows the heading, however, does not actually dispute the circuit court's decision to make these three awards. Instead, Fairmont Tool argues that the circuit court should have chosen a lower fee rate for the attorneys and should not have awarded some of the plaintiff's costs. Despite the heading, there is absolutely nothing in the argument about the service award to the plaintiff.

The WPCA requires employers to regularly pay employees their wages, requiring that "[e]very person, firm or corporation doing business in this state . . . shall settle with its employees at least twice every month . . . and pay them the wages due . . . for their work or services." W. Va. Code § 21-5-3(a) (2021).[5] However, the WPCA permits an employer to withhold money from an employee's paycheck if the withholding meets one of two requirements: (1) it is a statutorily authorized deduction; or (2) it is a valid assignment of wages. *Id.* (employers must pay employees "the wages due, less authorized deductions and authorized wage assignments[.]"). Nonetheless, the Legislature has made it clear that "[a]ny assignment of earnings and any deduction . . . shall be revocable by the employee at will at any time, notwithstanding any provision to the contrary." W. Va. Code § 46A-2-116(3) (2021).[6]

---

[5] West Virginia Code § 21-5-3(a) provides:

Every person, firm, or corporation doing business in this state, except railroad companies as provided in §21-5-1 of this code, shall settle with its employees at least twice every month and with no more than 19 days between settlements, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services.

[6] We recognize that when a deduction relates to an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 (ERISA), federal law controls the relationship between the employer and the employee. *See* 29 U.S.C.A. § 1144 (2006) (also known as "Section 514(a)," providing that "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"). *See also*, U.S. Department of Labor, "Information Letter 12-04-2018," 2018 WL 7051345 ("[I]t continues to be the Department's view that a state law . . . would be preempted by section 514(a) of ERISA to

Continued . . .

12

On the one hand, the WPCA provides a clear list of proper "deductions" which an employee may authorize an employer to withhold. The Legislature defined "deductions" as including "amounts required by law to be withheld, and amounts authorized for union, labor organization, or club dues or fees, pension plans, payroll savings plans, credit unions, charities, and any form of insurance offered by an employer[.]" W. Va. Code § 21-5-1(g) (2021).[7] A companion statute in the Consumer Credit and Protection Act, West Virginia Code § 46A-2-116(2)(b) (2021), also provides that deductions include "stock purchase plans."[8]

---

the extent the law is interpreted to limit, prohibit, or regulate an employer's adoption of automatic enrollment arrangements in connection with a disability benefit plan or other welfare benefit plan covered under Title I of ERISA, or making related deductions from wages for contribution to such a plan[.]").

[7] During the regular session in 2021, the Legislature adopted two different versions of West Virginia Code § 21-5-1: one was passed on March 11, 2021, the other passed on March 19, 2021. In this opinion, we have quoted the relevant portion of the later-passed version of the statute, House Bill 2009, which may now be found in Chapter 170 of the 2021 *Acts of the Legislature*. *See Wiley v. Toppings*, 210 W. Va. 173, 175, 556 S.E.2d 818, 820 (2001) ("When faced with two conflicting enactments, this Court and courts generally follow the black-letter principle that 'effect should always be given to the latest . . . expression of the legislative will[.]"). The version of West Virginia Code § 21-5-1 in House Bill 2009 contains a proviso, not relevant to the instant case, which says: "That for a public employee, other than a municipal employee covered by a collective bargaining agreement with a municipality which is in effect on July 1, 2021, the term 'deductions' shall not include any amount for union, labor organization, or club dues or fees." W. Va. Code § 21-5-1(g).

[8] In addition to the inclusion of "stock purchase plans" as a proper deduction solely in West Virginia Code § 46A-2-116(2)(b), we note that the Consumer Credit and Protection Act omits one category of deduction listed in the WPCA: "amounts authorized for . . . credit unions." W. Va. Code § 21-5-1(g). We presume these statutory differences were merely errors by a legislative scrivener.

13

On the other hand, in a historical sense, the meaning of the phrase "authorized wage assignment" in West Virginia Code § 21-5-3 has been somewhat murkier. This Court has, in years past, derived the meaning of "assignment" in West Virginia Code § 21-5-3 and in the WPCA from a statute, buried within the Consumer Credit and Protection Act, which defines an "assignment of earnings": West Virginia Code § 46A-2-116. We have said that because the two statutes "relate to assignment of earnings, they are to be construed together[.]" *Clendenin Lumber & Supply Co. v. Carpenter*, 172 W. Va. 375, 379, 305 S.E.2d 332, 336 (1983). *See also*, Syl. pt. 3, *Smith v. State Workmen's Comp. Com'r*, 159 W. Va. 108, 109, 219 S.E.2d 361 (1975) ("Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments."). The circuit court relied upon *Clendenin Lumber* and the Consumer Credit and Protection Act to give meaning to the word "assignment" in West Virginia Code § 21-5-3.

However, the Legislature recently amended the WPCA to, essentially, adopt our holding in *Clendenin Lumber* and formally connect the definitions of "assignment" in the WPCA and the Consumer Credit and Protection Act. Effective June 17, 2021, the WPCA now provides that "[t]he term 'assignment', as used in § 21-5-3 of this code, shall have the same meaning as the term 'assignment of earnings' set forth in § 46A-2-116(2)(b)

14

of this code." W. Va. Code § 21-5-1(o) (2021).[9] Turning to the Consumer Credit and

Protection Act, we find the following broad definition:

> "Assignment of earnings" includes *all forms of assignments, deductions, transfers, or sales of earnings to another*,[10] either as payment or as security, and whether stated to be revocable or nonrevocable, and includes any deductions authorized under the provisions of § 21-5-3 of this code, except deductions for union, labor organization, or club dues or fees, pension plans, payroll savings plans, charities, stock purchase plans, and any form of insurance offered by an employer.

W. Va. Code § 46A-2-116(2)(b) (emphasis added).[11]

Generally speaking, "[a]n 'assignment' is the transfer of some identifiable

property, claim, or right from the assignor to the assignee." 6A C.J.S. *Assignments* § 2

(2021). By tying the definition of "assignment" in the WPCA with that in the Consumer

Credit and Protection Act, the Legislature has made it clear that an "assignment" means *all*

forms of assignments or deductions from an employee's wages, except those withholdings

that meet the definition of an "authorized deduction." W. Va. Code § 46A-2-116(2)(b).

---

[9] As we noted in footnote 6, the Legislature adopted two competing versions of W. Va. Code § 21-5-1 during the 2021 session. While we do not firmly resolve the question, we perceive that the later-passed version (House Bill 2009) would be the controlling version and quote that version in the text of this opinion.

[10] "The phrase 'to another' as used in the definition of an assignment of earnings . . . includes an employer[.]" Syl. pt. 1, *Clendenin Lumber*, 172 W. Va. at 376, 305 S.E.2d at 333.

[11] The Consumer Credit and Protection Act, West Virginia Code § 46A-2-116(1), prohibits an employer from subjecting more than twenty-five percent of an employee's disposable income to "one or more assignments of earnings for the payment of a debt or debts arising from" consumer credit sales, leases, loans, or other forms of sales.

Hence, we hold that under the WPCA, West Virginia Code §§ 21-5-1(o) and 21-5-3, an "assignment of wages" is the transfer of the right to collect future wages from the wage earner to the employer. An assignment of wages is, in effect, any amount that an employer withholds from an employee's wages that does not meet the Act's definition of "deductions" in West Virginia Code § 23-5-1(g).

To qualify as a "valid" or "authorized" assignment of wages, the versions of West Virginia Code § 21-5-3(e) (2008 and 2015) in effect during the period covered by this lawsuit imposed the following conditions upon assignments:

> No assignment of or order for future wages shall be valid for a period exceeding one year from the date of the assignment or order. An assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and any order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided, That no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof[] is endorsed thereon[.][12]

West Virginia Code § 21-5-3 was clear and unambiguous: to be an "authorized assignment of wages," the Legislature mandated that the assignment from the employee to the employer meet six conditions: (1) be in writing; (2) not be in effect for more than one year after the date of the assignment; (3) specify the total amount due to and collectible by the

---

[12] The Legislature amended West Virginia Code § 21-5-3(e) (2008) in 2015 to remove an improperly placed comma. This change has no effect on our discussion.

employer; (4) state that three-fourths of the employee's wages were exempt from the assignment; (5) be "accepted" and signed by the employer; and (6) be notarized.[13]

Furthermore, the requirements of West Virginia Code § 21-5-3 are binding upon employers and employees. For instance, regulations by the Commissioner of Labor interpreting the WPCA state:

> An employer *shall* have a written assignment of wages that conforms to the requirements set forth in W. Va. Code §21-5-3(e) on the form approved by the Commissioner prior to making any deductions, other than authorized statutory deductions, from an employee's wages.

42 C.S.R. § 5.9.1 (2019) (emphasis added).[14] In sum, "compliance with all requirements of the [WPCA] is mandatory when assigning an employee's wages[,]" Syl. pt. 4, *Jones v.*

---

[13] Effective June 17, 2021, the Legislature modified West Virginia Code § 21-5-3(e) to eliminate the requirement that a wage assignment be notarized, and the statute now provides, in pertinent part:

> (e) No assignment of or order for future wages may be valid for a period exceeding one year from the date of the assignment or order. An assignment or order shall be in writing and shall specify thereon the total amount due and collectible by virtue of the same and . . . three-fourths of the periodical earnings or wages of the assignor are all times exempt from such assignment or order and no assignment or order is valid which does not so state upon its face: Provided, That no such order or assignment is valid unless the written acceptance of the employer of the assignor to the making thereof is endorsed thereon[.]

[14] The form wage assignment approved by the Commissioner is available on the Division of Labor's website. *See* https://labor.wv.gov/Wage-Hour/Wage_Collection/Documents/EMPLOYEE%20WAGE%20ASSIGNMENT%20FILLABLE%20PDF.pdf (last accessed November 19, 2021).

17

*Tri-County Growers, Inc.*, 179 W. Va. 218, 366 S.E.2d 726 (1988), because "[t]he history of the [WPCA] provisions on wage assignments shows a deliberate, legislative intent to allow assignment of wages if, and only if, certain specified conditions are met." *Id.* at 222, 366 S.E.2d at 730. "An assignment that does not conform to the statutory requirements is invalid." 6 Am. Jur. 2d Assignments § 68 (2021). Finally, if an employer withholds money from an employee's paycheck without a valid assignment of wages, the WPCA permits the employee to "bring any legal action necessary to collect" those amounts improperly withheld. W. Va. Code § 21-5-12(a) (1975). *See also Western v. Buffalo Min. Co.*, 162 W. Va. 543, 546, 251 S.E.2d 501, 503 (1979) ("That the assignment [of wages] was illegal under the statute does not preclude the plaintiffs from recovering on it, since they are a part of the class which the statute is designed to protect.").

Against this strong headwind of statutes and caselaw, Fairmont Tool asserts that the circuit court erred in finding that that the company's withholdings from employee paychecks were unauthorized assignments of employee wages simply because the company lacked any writing meeting the requirements of West Virginia Code § 21-5-3(e). Fairmont Tool's argument appears to be that it never took any assignment of wages, and that instead it was merely giving its employees advances of "cash" or "cash equivalents"

18

when it allowed employees to purchase boots, uniforms, and tools using company credit accounts, and that it was recouping these "advances" through paycheck withholdings.[15]

To be clear, Fairmont Tool insists it was not acting as a "creditor" nor was it seeking to compel its employees to repay a "debt." Fairmont Tool's semantic argument seeks to avoid our holding in *Clendenin Lumber & Supply Co. v. Carpenter*, 172 W. Va. at 378-81, 305 S.E.2d at 336-38. In *Clendenin Lumber*, we examined the situation of a company that permitted its employee to incur debts by purchasing goods from the company, and then compelled the employee to repay those debts through paycheck deductions. Even though the company in *Clendenin Lumber* was a "creditor" who charged the employee interest on the purchases, we determined that the company's paycheck deductions to recoup a debt owed by its employee were invalid wage assignments that failed to meet the strict terms of the WPCA. We found that "W.Va. Code, 21-5-3 [1979], prescribes the required form of an assignment of earnings by an employee who voluntarily assigns future earnings to another in satisfaction of a debt." *Id.* at 380, 305 S.E.2d at 337.

Instead of claiming it was a "creditor" or that its employees owed a "debt," Fairmont Tool contends it gave employees "advances" and was conducting itself in a manner approved by this Court in the unpublished decision of *Rotruck v. Smith*, No. 14-

---

[15] The plaintiff responds to this argument by pointing out that Fairmont Tool's spreadsheets contain a category for "cash advances" that is separate and apart from the categories for purchases of uniforms, boots, tools and other merchandise. Further, the plaintiff points out he specifically did not seek to recoup paycheck deductions for cash advances, and that cash advances were intentionally excluded from the class definition.

19

1284, 2016 WL 547190 (W. Va. Feb. 10, 2016) (memorandum decision), and it insists we should, therefore, approve its conduct too. In *Rotruck*, an employee received compassionate financial assistance from her boss in the form of a tank of gas, payments for medication, car payments, and cash advances to cover emergencies. The boss, however, expected the employee to repay her the assistance and deducted the money from the employee's paycheck. We concluded that the assistance was "more akin to salary advances graciously provided in response to [the employee's] financial need" and, hence the paycheck deductions "were not wage assignments" as outlined in West Virginia Code § 21-5-3(e). *Id.* at *5.

Our examination of *Rotruck* compels us to acknowledge that the outcome of the memorandum decision and its interpretation of the wage-assignment provisions of West Virginia Code § 21-5-3(e) were intimately tied to the unique facts of that case. Of course, "memorandum decisions may be cited as legal authority, and are legal precedent," but "their value as precedent is necessarily more limited[.]" Syl. pt. 5, in part, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014). However, a federal district court recently examined *Rotruck* and concluded what is obvious: *Rotruck* "reached an equitable result" but is "inconsistent with the WPCA and with published opinions of the Supreme Court of Appeals." *Atkins v. AT&T Mobility Servs., LLC,* No. 2:18-CV-00599, 2020 WL 2842054, at *3 (S.D.W. Va. June 1, 2020). We agree with the district court's analysis in *Atkins*, and further find *Rotruck* directly at odds with the text of West Virginia Code § 21-

20

5-3. Hence, to clarify our law interpreting and applying the WPCA, we hereby overrule *Rotruck*.

We have examined the record and find no error by the circuit court in granting partial summary judgment to the plaintiff on the question of liability under the WPCA. Fairmont Tool admitted in discovery that it withheld money from employee paychecks and admits in its briefs to this Court it took those withholdings. The withholdings were not "authorized deductions" as defined by the WPCA. Further, the withholdings were not "authorized wage assignments" because Fairmont Tool could produce no document in compliance with West Virginia Code § 21-5-3(e) showing it had received a valid, written assignment of wages from its employees. We recognize the seeming unfairness of the situation for Fairmont Tool, but we also recognize the black-and-white pronouncement of the Legislature: when an employer withholds money from an employee's paycheck, the employer must establish its right to that money by obtaining a writing that complies with the WPCA.[16] Because there was no material question of fact that Fairmont Tool failed to follow the statute, summary judgment was proper.

---

[16] Recent legislative changes have created a remedy for employers who provide employees with uniforms, phones, computers, supplies, equipment, or other forms of property worth more than $100. West Virginia Code § 21-5-4(f) (2018) now provides that "if at the time of discharge or resignation, an employee fails to return employer provided property . . . the employer may withhold, deduct or divert an employee's final wages, in an amount . . . to recover the replacement cost of the employer provided property[.]" The statute contains numerous limitations, including the requirement of a written agreement, signed by the employee at the same time the employer provides the

Continued . . .

## B. The Parties' Stipulations

Fairmont Tool's second argument is broad and far ranging, but it concerns the circuit court's summary judgment order on liquidated damages as well as the parties' stipulations, where Fairmont Tool agreed to the method the circuit court would use to calculate liquidated damages. Fairmont Tool maintains that the parties' stipulations "had no force or effect" and that the circuit court should have voided or ignored the stipulations, or at least permitted Fairmont Tool to withdraw from the agreement. It further contends that the circuit court erred when it relied upon the parties' agreement in their stipulations and awarded liquidated damages to current and former employees in the amount of three times the unpaid wages between July 1, 2012, and June 10, 2015.

We begin our analysis by pointing out that the stipulations met the requirements of the Trial Court Rules in that they were "in writing, signed by the parties making them or their counsel, and promptly filed with the clerk." Trial Court Rule 23.05. As for whether the stipulations were binding, in the seminal case of *West Virginia Department of Transportation v. Veach*, 239 W. Va. 1, 8, 799 S.E.2d 78, 85 (2017), this Court noted that "attorneys are authorized to enter into stipulations on behalf of their clients and a party is ordinarily bound by a stipulation made by its attorney." *Veach* recognized a bedrock principle: a stipulation is an enforceable contract, and, like a contract, relief from

property, which itemizes each item of property and specifies each item's replacement cost. *See* W. Va. Code § 21-5-4(f)(1)(C)(i).

22

a stipulation "is usually available only in cases of fraud, mistake, improvidence or material change in circumstances, where in equity and good conscience the stipulation ought not to stand." *Id.* (quoting 4 Williston on Contracts § 8.50 (4th ed. 2016)). This Court unanimously concluded in Syllabus Point 6 of *Veach* that "[a] circuit court is afforded wide discretion in determining whether or not a party should be relieved of a stipulation, and such decision should not be set aside absent an abuse of discretion." *Id.* at 4, 799 S.E.2d at 81.

Fairmont Tool does not allege that the stipulations are the result of fraud, mistake, or any other contractual principle for the recission of contracts. In fact, Fairmont Tool's opening brief does not cite *Veach* or its holdings at all. Fairmont Tool instead asserts that the parties were motivated to enter into the stipulations to avoid having to hire experts, and that the plaintiff "breached" the agreement by hiring an economist. However, the stipulations contain no limitation precluding the parties from hiring experts to provide needed testimony, analysis, and evidence and, hence, there was nothing for the plaintiff to breach by hiring an expert. Moreover, to the extent Fairmont Tool asserts that the stipulations by its prior counsel are "improvident" and contain a damages scheme not contained in the current WPCA, the law is clear that a party can agree to waive contractual, statutory or even constitutional rights. "Because stipulations fairly entered into often operate to settle controversies or expedite judicial proceedings, they are favored. They are therefore generally controlling and conclusive, so much so that it has even been held that parties may stipulate away statutory, or even constitutional, rights." 4 Williston on

Contracts § 8:50 (4th ed. 2021). *See also, Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 144, 785 S.E.2d 844, 850 (2016) ("It is a well-established principle of contract law that contract rights can be waived."); Syl. pt. 2, in part, *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975) ("A criminal defendant can knowingly and intelligently waive his constitutional rights[.]"); *Smith v. Bell*, 129 W. Va. 749, 762, 41 S.E.2d 695, 701 (1947) ("Waivers of statutory rights and privileges created for the benefit of an individual and which are personal to him are generally held to be valid."). Accordingly, our holding in *Veach* supports the circuit court's determination that the parties were bound by the stipulations.

We also find no merit in Fairmont Tool's position that the circuit court should have voided or ignored the parties' binding agreement contained within the stipulations. The parties' stipulations were the product of substantial negotiations between counsel and were intended by the parties to establish an agreed-upon methodology for calculating class damages, thereby eliminating any future risk or uncertainty on that question. The stipulations specify that if the plaintiff was able to establish that Fairmont Tool violated the WPCA for any wage withholdings it took between July 1, 2012, and June 10, 2015, then Fairmont Tool agreed to pay three times those withholdings as liquidated damages. For improper wage withholdings between June 11, 2015, and July 31, 2017, Fairmont Tool agreed to pay twice the wage withholdings as liquidated damages.[17] The circuit court's

_____

[17] The parties' stipulations regarding liquidated damages apparently reflects a concern or confusion regarding amendments to the WPCA. Prior to June 10, 2015, West

Continued . . .

24

summary judgment order on damages merely reflects the terms of the parties' agreement in the stipulations. Accordingly, we find no error or abuse of discretion in the circuit court's decision to bind Fairmont Tool to its agreement.

## C. Fairmont Tool's Counterclaim

Fairmont Tool asserts that it had a contract with its employees that circumvented the WPCA. Whether this contract was written or oral is unclear from Fairmont Tool's arguments. There are forty copies of a written "Wage Deduction Authorization Agreement" in the record, each signed by some current and/or former employees of Fairmont Tool, an untold number of whom are members of the class at issue in this case.[18] Fairmont Tool directs us to no such written agreement signed by the plaintiff; it also makes no reference to this written agreement in its arguments.

Regardless of the form of the contract, Fairmont Tool contends that the plaintiff (personally) and employees (generally) were permitted to purchase uniforms,

---

Virginia Code § 21-5-4(e) (2013) dictated that an employer who failed to pay an employee wages due was liable for both the unpaid wages and "liable to the employee for three times that unpaid amount as liquidated damages." Effective June 11, 2015, the Legislature amended the statute to provide that the employer was "liable to the employee for two times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e) (2015). The Legislature subsequently amended the statute in 2018, but no changes were made that affect this appeal.

[18] As we discussed in the facts, the class covers current and former employees between July 1, 2012, and July 31, 2017. Of the forty "Wage Deduction Authorization Agreements" in the appendix record, only thirty-four were signed within the class's defined period. Additionally, the parties do not describe if any of the individuals who signed the forty agreements are members of the class.

boots, tools, and other merchandise at vendors using either the company's account or a company credit card. Further, it cites to evidence of record showing that the plaintiff was permitted, with his supervisor's approval,[19] to purchase personal items like meals, a winter coat, boots for himself and a family member, and a bag of calcium chloride. Saying it "advanced money and the cash equivalent" to the plaintiff and that he "agreed to reimburse Fairmont Tool for these advances . . . through agreed upon payroll deductions," Fairmont Tool argues in its brief that its payroll deductions were to recoup "advances made on behalf of [the plaintiff] and the putative class members for personal purchases on company credit cards and company credit accounts with outside vendors, including safety boots and uniform rentals."[20]

Building upon this position, Fairmont Tool contends the plaintiff "breached" and "repudiated" his unwritten reimbursement agreement with the company. Hence, on June 22, 2018, Fairmont Tool moved to amend its answer to assert a counterclaim for

---

[19] In his deposition, the plaintiff testified he was given permission to make personal purchases with the company credit card by either "a Fairmont Tool supervisor or a member of management." Moreover, the employee responsible for Fairmont Tool's human resources, employee benefits, and payroll testified that the company never disciplined or raised concerns with the plaintiff about his use of the company credit cards or company accounts. This employee testified that neither the plaintiff nor any other employee "did anything wrong in terms of using a company account or company credit card[.]" The company simply allowed employees to make the purchases, then deducted the amounts from the employees' paychecks.

[20] Comparing the circuit court's calculation of improper deductions over five years ($87,731) against the number of employees affected (136), it appears the company deducted about $10.75 from each employee's wages every month.

26

breach of contract and unjust enrichment against the plaintiff and the members of the class. The circuit court permitted the amendment.

The plaintiff subsequently filed a motion for summary judgment, and, on June 21, 2019, the circuit court granted the motion and dismissed Fairmont Tool's counterclaim. As noted previously, because Fairmont Tool took deductions from employee paychecks without a written assignment that met the WPCA's requirements, the circuit court granted summary judgment and found Fairmont Tool liable for violating the WPCA. The circuit court then noted that Fairmont Tool's counterclaim was based on the notion that its employees had circumvented the WPCA's assignment provisions and entered into a "private agreement" that supposedly permitted Fairmont Tool to withhold wages to pay for certain goods and services. Presuming such an agreement actually existed, the circuit court declared it would be an "illegal contract" and unenforceable because the WPCA expressly precludes an employee from contractually altering his or her rights under the WPCA.

In a series of scattershot arguments, Fairmont Tool contends that the circuit court erred either in dismissing the counterclaim, or in refusing to "offset" Fairmont Tool's "advances" against the plaintiffs' damages. Having examined the circuit court's order, we find no error and reject Fairmont Tool's assertions. West Virginia Code § 21-5-10 (1975) expressly prohibits an employee and employer from contractually altering or waiving the employee's right to wages under the WPCA. *See Ash v. Ravens Metal Prod., Inc.*, 190 W. Va. 90, 96-97, 437 S.E.2d 254, 260-61 (1993) ("[T]here is express language in W. Va.

Code, 21-5-10 (1975), precluding contractual alteration of those rights[.]").  The statute

provides that

> no provision of this article may in any way be contravened or set aside by private agreement, and the acceptance by an employee of a partial payment of wages shall not constitute a release as to the balance of his claim and any release required as a condition of such payment shall be null and void.

W. Va. Code § 21-5-10.

We examined West Virginia Code § 21-5-10 in *Citynet, LLC v. Toney*, 235 W. Va. 79, 772 S.E.2d 36 (2015), where the employer had created a written fringe-benefit plan for its employees.  We noted that, when the plaintiff-employee left his job, the WPCA required the employer to pay him his wages and fringe benefits "no later than the next regular payday[.]"  *Id.* at 92, 772 S.E.2d at 49 (quoting W. Va. Code § 21-5-4(c) (2006)). When the employer attempted to circumvent that narrow payment period by citing to a ninety-day payout schedule in the documents creating the fringe benefit, we rejected the employer's position.  Citing to West Virginia Code § 21-5-10, we "refused to enforce an agreement between an employer and an employee to pay wages outside the time frame set forth in the WPCA."  *Id.* at 95, 772 S.E.2d at 52.

Likewise, in *Britner v. Med. Sec. Card, Inc.*, 200 W. Va. 352, 489 S.E.2d 734 (1997) (per curiam), we discussed the effect of this section against an employer's argument that "employment wage agreements may be modified by acquiescence" to the employer's unilateral decision to delay paying its employees.  We rejected the employer's argument, finding:

> The legislature has attempted to prevent employers from abusing their positions by compromising the wages of employees. The language in W. Va. Code § 21-5-10 is mandatory. An employer must pay earned wages to its employees. Any other reading would seriously compromise and undermine the legislative intent of W. Va. Code § 21-5-10.

*Id.* at 355, 489 S.E.2d at 737. *See also*, *Szturm v. Huntington Blizzard Hockey Assocs. Ltd. P'ship*, 205 W. Va. 56, 61, 516 S.E.2d 267, 272 (1999) (rejecting employer's argument that employee waived his right to payment of wages by agreeing to continue to work for months without pay, finding that W. Va. Code § 21-5-10 prevents an employer from altering an employee's statutory right under the WPCA to regularly receive wages).

Fairmont Tool purports that it had a private agreement that its employees would repay various and sundry debts through paycheck deductions, despite those deductions violating the wage assignment provisions of the WPCA. Fairmont Tool's counterclaim for breach of contract, unjust enrichment, or similar arguments[21] are attempts to circumvent the clear terms of West Virginia Code § 21-5-10 which expressly prohibits private agreements that contravene the WPCA. It is axiomatic that a court will not enforce a contract that is illegal and void. Accordingly, the circuit court correctly granted summary judgment on the counterclaim and properly refused any setoff based upon what was clearly a void, unenforceable agreement.

---

[21] Fairmont Tool's amended answer also asserted the defenses of anticipatory breach, repudiation, unclean hands, and setoff, defenses that all relate to the agreement Fairmont Tool alleges it had with its employees to bypass the requirements of the WPCA.

**D. Attorney Fees and Costs**

Finally, Fairmont Tool contends that the circuit court erred in the amount of attorney fees it awarded to plaintiff's counsel. Specifically, it argues that the hourly rate chosen by the circuit court ($350 per hour) exceeded the prevailing rate in the community. Additionally, it asserts that the circuit court erred in awarding costs to pay for two economic experts.

We have often said that "[t]he decision to award or not to award attorneys' fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse." *Beto v. Stewart*, 213 W. Va. 355, 359, 582 S.E.2d 802, 806 (2003); *see also Sanson v. Brandywine Homes, Inc.*, 215 W. Va. 307, 310, 599 S.E.2d 730, 733 (2004) ("We . . . apply the abuse of discretion standard of review to an award of attorneys' fees."). Likewise, "[t]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." Syl. pt. 3, in part, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959).

West Virginia Code § 21-5-12(b) (1975) provides that if a plaintiff successfully prosecutes an action under the WPCA, the circuit court may "assess costs of the action, including reasonable attorney fees against the defendant[.]" In other words, "[a]n employee who succeeds in enforcing a claim under W. Va. Code Chapter 21, article

should ordinarily recover costs, including reasonable attorney fees unless special circumstances render such an award unjust." Syllabus Point 3, *Farley v. Zapata Coal Corp.*, 167 W.Va. 630, 281 S.E.2d 238 (1981). Moreover, in the parties' stipulations, Fairmont Tool agreed that the plaintiff could recover attorney's fees and costs.

Regarding the amount of an attorney's fee to award, the seminal case of *Aetna Casualty & Surety Company v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986) lists a series of factors for courts to consider:

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. pt. 4, *Id.* While "a losing defendant cannot be saddled with attorneys' fees that are unreasonably large simply because the plaintiff chooses a lawyer from New York City or another urban area," *Bishop Coal Co. v. Salyers*, 181 W. Va. 71, 82, 380 S.E.2d 238, 249 (1989), "courts considering the reasonableness of attorney's fees should consider how common it is today for lawyers to travel from Charleston, or Clarksburg, or Huntington, or

31

other cities to represent clients in other, smaller counties." *Hollen v. Hathaway Elec., Inc.*, 213 W. Va. 667, 673, 584 S.E.2d 523, 529 (2003).

We have reviewed the record and find no abuse of discretion by the circuit court in its award of attorney's fees. The circuit court applied the factors outlined in *Pitrolo* and chose a reasonable fee commensurate with the experience and skill of the plaintiff's lawyers, several of whom were based in Charleston. As for the costs for the two experts, the record reflects that Fairmont Tool did not object to the first expert, who worked as the class administrator. The second expert was initially hired by plaintiff's counsel in response to Fairmont Tool's counterclaim, but later offered prejudgment interest calculations – including one requested by Fairmont Tool – as well as other assessments used by the circuit court to calculate the appropriate amount of class damages. In light of these facts, the circuit court acted well within its discretion in its award of costs for these two experts.

## IV. Conclusion

We find no error in the circuit court's orders.

Affirmed.